Ben Construction Company, Appellant, *v.*
Duquesne Sanitary Authority,
Appellant.

Argued October 4, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Raymond G. Hasley,* with him *Harold R. Schmidt,* and *Rose, Schmidt and Dixon,* for plaintiff.

*David M. Harrison,* with him *Michael H. Kowallis,* and *Harrison & Louik,* for defendant.

OPINION BY MR. JUSTICE EAGEN, January 20, 1967:

In 1963, the Sanitary Authority of the City of Duquesne, Allegheny County (Authority) awarded the Ben Construction Company (Ben) a written contract for the construction of certain intercepting sewers. A dispute arose as to the total amount due Ben for performance.

By agreement of the parties, the issue proceeded to arbitration under the Act of April 25, 1927, P. L. 381, 5 P.S. §161 et seq. The arbitrators made comprehen-

sive findings and entered an award based thereon. Authority then petitioned the common pleas court to modify or correct the award. Ben countered with an answer asking that Authority's petition be dismissed, and the court increase the amount of the award. From the court's judgment, both sides appealed.

The contract provided that Ben would construct the sewers by full-depth, open-cut trenches, but with the permission of Authority's consulting engineer could use the tunnel method. Ben sought and received this permission for a portion of the work. There was no unit price per linear foot provided for tunnel construction (as there was for the open-cut method); however, in reference thereto the contract stated, "It shall be paid for at the contract unit price for pipe installed in open cut for the corresponding depth classification."

The contract further provided for monthly payments by the Authority with a ten per cent retainage. Upon completion of the work and Ben's furnishing of a maintenance bond to the Authority, the balance unpaid became due within thirty days.

In the course of construction, Ben encountered within the trench limits a much greater amount of rock and "hard materials" than it anticipated from its initial inspection of the work sites and study of the information booklet circulated by Authority for the guidance of bidders. Ben then took the position that, under the terms of the contract, the materials to be excavated were "classified," i.e., a separate payment was due for any "hard materials" encountered and excavated. It, therefore, in one of its early monthly statements for payment of estimated work done, included a separate charge for "hard materials" excavated. Authority disputed the charge and maintained that *all* materials excavated from *within* the channel limits were "unclassified" and considered the same for purposes of payment. It did not, however, dispute

Ben's right to additional payment for any "hard materials" excavated from outside the sewer channel. By agreement Ben accepted the monthly payment due minus the disputed rock excavation charge, reserving, however, the right to seek future payment therefor. This arrangement continued until completion of the work in September 1963.

Subsequently, Ben made several demands for payment of the retainage money, which amounted to $39,788.08. Payment was not forthcoming until September 1964.

Since the arbitration proceedings and award were under the provisions of the Act of 1927, supra, as distinguished from common law arbitration, our review of the award is akin to that of a verdict of a jury. Every inference of fact must be drawn in favor of the award; however, mistakes of law may be rectified. See, *J. A. Robbins Co., Inc. v. Airportels, Inc.,* 418 Pa. 257, 210 A. 2d 896 (1965), and *Pa. Tpk. Comm. v. Smith,* 350 Pa. 355, 39 A. 2d 139 (1944).

The issues presented will be discussed and disposed of ad seriatim.

The board concluded, and the lower court agreed, that Ben was entitled under the contract to separate payment for rock and "hard materials" excavated from within the sewer channel. We affirm this conclusion.

Authority contends that since its engineer refused the claim of a separate charge for excavation of these materials, his determination is final and binding under the contract in the absence of proof of fraud or bad faith.

In support of this position, it relies upon the following contractual provision: "All work under this contract shall be done to the satisfaction of the Engineer who shall determine the amount, quality, acceptability and fitness of the several items of work and materials which are to be paid for hereunder. He shall decide

also all questions which may arise as to the fulfillment of the terms of the contract by the contractor, and as to the intent and purpose of the contract, plans and specifications. The determination of the Engineer in all such matters shall be final and binding upon the parties thereto."

In our opinion, the above quoted portion of the contract, requiring the engineer's approval, referred to and was limited to the physical aspects of the contractor's work. In other words, the engineer was to oversee the quotidian details of the work and make sure Ben performed as specified. This interpretation is most sensible since the rationale of provisions, like the Engineer Approval Clause, is to enable the engineer to utilize his approval powers in the specific realm of his expertise, e.g., to have the final say over the trench specifications; to determine if the pipe cradle was within the intendment of the original plans; to ascertain whether the sheeting and shoring was adequate, and the like.

The instant case does not involve a dispute of the nature above mentioned. There is no dispute as to the adequacy of Ben's performance. There is no question but that the "hard materials" involved needed to be excavated. The only issue was whether such excavations required separate payment.

While the resolution of this dispute requires a finding as to the intent and purpose of the contract, we do not think the Engineer Approval Clause, supra, is controlling here. When that clause speaks of "intent and purpose of the contract", it is in the context of physical performance or standards of performance which are intended by the contract document, which must be met by the contractor and which must be approved ultimately by the engineer.

The above line of reasoning becomes even more appealing when read in the light of another contract pro-

vision entitled "Arbitration," which states: "All decisions of the Engineer shall be final except in cases involving time or financial considerations, which, if no agreement regarding such cases is reached, shall be subject to arbitration. . . ."

The dispute over "hard materials" excavation and the sheeting and shoring is clearly a financial one and, we feel comes within the compass of the above provision. To reiterate, we do not find the general Engineer Approval Clause, supra, dispositive, because this particular dispute centers in an area where engineer expertise is not particularly germane.

The next issue is whether Ben is entitled to the payment of interest on the retainage money for the period of eleven months, from 30 days after the contract was completed to the date of actual payment of this money.

The board refused this interest claim, but the lower court modified the award and added this item thereto. We disagree with the court's ruling in this respect.

We agree that no legitimate dispute existed between the parties as to the amount of the retainage money due, and this money could not rightfully be retained on this basis. But, under the contract, Ben was clearly required to furnish a maintenance bond prior to final payment. This it failed to do until August 27, 1964. A check covering payment of the retainage money due was mailed on September 22, 1964, well within the thirty-day deadline specified in the contract. Hence, payment thereof was not wrongfully delayed.

The remaining issues are raised by Ben's appeal.

Ben first contends since it was ultimately resolved that it was entitled to separate payment for the excavation of "hard materials" from the sewer channel, and it submitted monthly, timely claims therefor, it is entitled to interest on the sum awarded for this work. The board and the lower court concluded otherwise. We do not view this as legally incorrect.

This facet of the claim clearly involved a legitimate dispute between the parties and a knotty interpretative contractual problem. Moreover, there is evidence in the record to establish that Ben itself was uncertain as to its right to separate payment for this work. The equities compel the observation that the problem could have been eliminated if, prior to submitting its bid, Ben had made use of the provision contained in the "Information for Bidders," booklet issued by the Authority which stated: "If any person contemplating submitting bids for the proposed work is in doubt as to the true meaning of any part of these proposed contract documents, he may submit to the Engineer a written request for an interpretation thereof . . . ."

Ben finally urges that under the contract, it was entitled to be compensated for the tunnel work construction in the same amount as if it had used the open-cut method of construction. What really is thus claimed is, that the award should reflect and include the larger amount of "hard materials" which *would* have been excavated and the larger amount of sheeting and shoring which *would* necessarily have been installed in that portion of the job where tunneling was utilized, if the open-cut method had been followed. The board disallowed this claim, and the lower court refused to modify the award in this respect. We affirm.

We do not construe the controlling contractual provision (supra) to intend that the contractor was to be paid for work not actually performed, or materials not actually furnished. To us, the provision merely imports that the payment for the work actually performed through the tunneling method was to be gauged by the same standards governing the open-cut method, e.g., the unit price per linear foot of sewer pipe laid was to be the same, regardless of the method used. Thus, if and when the tunneling method was employed,

payment therefor was to be determined by referring to the open-cut payment schedules.

To conclude, we affirm the judgment of the court below, except as to interest allowed Ben on the retainage money.

Judgment as modified affirmed.

Mr. Justice MUSMANNO dissents.