TENNESSEE CAROLINA TRANSPORTATION, INC. v. STRICK CORPORATION

No. 11

(Filed 1 June 1973)

1. Sales § 6; Uniform Commercial Code § 15— implied warranty of fitness — Pennsylvania law

In Pennsylvania the implied warranty of fitness for a particular purpose, Pa. Stat. Ann. tit. 12A, § 2-315 (1970), not only protects a buyer who purchases goods with the intention of using them in a "particular" manner, meaning a manner in which they would not normally be expected to be used, but also protects a buyer when his particular purpose is the general or ordinary purpose; consequently, the warranty of fitness applied to trailers purchased for the general or ordinary purpose of hauling cargo.

2. Sales § 6; Uniform Commercial Code § 15— implied warranty of fitness — implied warranty of merchantability — Pennsylvania law

Under Pennsylvania law both the implied warranty of merchantability and the implied warranty of fitness would exist where the seller is a merchant with respect to goods of that kind, the buyer is buying the goods for the ordinary purpose, and the requirements of Pa. Stat. Ann. tit. 12A, § 2-315 (1970) are met.

3. **Sales § 6; Uniform Commercial Code § 15— disclaimer of warranties previously created — Pennsylvania law**

Under Pennsylvania law a disclaimer in a purchase money security agreement could not as a matter of law disclaim the implied warranties previously created in the written sales arrangement. Pa. Stat. Ann. tit. 12A, § 9-206(2) (1970).

4. **Sales § 18; Uniform Commercial Code § 20— warranty of fitness — exclusion by course of dealing or performance — insufficiency of evidence**

In an action to recover damages for breach of an implied warranty of fitness of trailers purchased from defendant, the evidence did not require submission of an issue to the jury as to whether implied warranties had been excluded "by course of dealing or course of performance" within the purview of Pa. Stat. Ann. tit. 12A, § 2-316(3)(c) (1970).

5. **Sales § 19; Uniform Commercial Code § 20— breach of warranty — buyer retains goods — measure of damages — Pennsylvania law**

Under Pennsylvania law the measure of damages for breach of warranty, when the buyer retains the goods and sues for the loss of bargain occasioned by the failure of the goods to conform to the warranty, is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. Pa. Stat. Ann. tit. 12A, § 2-714(2) (1970).

6. **Courts § 21— contract made in another state — admission of evidence — what law governs**

Questions of the admission and exclusion of evidence are generally considered procedural and governed by the *lex fori*.

7. **Evidence § 19— value of personal property — value at another time**

Where the value of personal property at a given point in time is in issue, evidence of its value within a reasonable time before or after such point is competent as bearing upon its value at the time in issue, but evidence of the property's value beyond a reasonable time before or after that point lacks probative value and is incompetent.

8. **Sales § 14; Uniform Commercial Code § 20— breach of warranty — cost of repairs**

While the cost of repairs may be competent as tending to show the difference between the value of goods as warranted and as delivered, such evidence must be confined to a point in time reasonably proximate to the date of delivery.

9. **Sales § 14; Uniform Commercial Code § 20— breach of warranty of fitness — evidence of value at time after acceptance — evidence of cost of repairs — prejudicial error**

In this action to recover damages for breach of the implied warranty of fitness of trailers purchased from defendant, the trial court committed prejudicial error in the admission of opinion testimony of the value of the trailers more than two and a half and more than five years after the time of acceptance and in the admission of

Transportation, Inc. v. Strick Corp.

testimony as to what it would cost to repair the trailers at an un-specified time more than two years after the acceptance, and defendant is entitled to a new trial on the issue of damages.

10. **Sales § 19; Uniform Commercial Code § 20— breach of warranty — damages — effect of repairs by seller**

In an action for breach of an implied warranty of trailers which is governed by Pennsylvania law, the measure of damages established by Pennyslvania statute should be reduced by the amount, if any, by which repairs made by the seller enhanced the value of the trailers.

11. **Sales § 14— breach of warranty — new trial on damages issue — new trial on breach of warranty issue**

In an action for breach of warranty of fitness of 150 trailers, a new trial on the issue of damages also requires a new trial on the issue as to breach of warranty because the jury that assesses the damages should be the same jury that determines whether and to what extent the fitness warranty was breached.

12. **Sales § 17; Uniform Commercial Code § 21— breach of warranty — entire order**

It is not necessary that each and every commercial unit in an order of goods manufactured under the same specifications be shown to have become totally unusable before recovery may be had for breach of warranty with respect to the entire order.

13. **Sales § 17; Uniform Commercial Code § 20— breach of warranty — entire order of trailers — sufficiency of evidence**

Plaintiff's evidence was sufficient to go to the jury on the issue of breach of warranty of fitness with respect to all 150 trailers purchased from defendant, although 141 trailers are still in service, where it tended to show that the 150 trailers constituted one order and were manufactured under the same specifications, one trailer collapsed eight days after it was put in service while carrying a normal load under normal conditions and another collapsed five months later, defendant thereafter reinforced the top rails of the trailers with an additional rail 20 feet long, two years later seven more trailers collapsed within a short period of time by breaking in two at the end of such 20-foot section, and the trailers were thereafter used as much as possible to haul light-type freight.

14. **Courts § 21; Sales § 19; Uniform Commercial Code § 20— breach of warranty — pre-judgment interest — what law governs**

Where an action for breach of warranty was governed by the substantive law of Pennsylvania, the place where the parties con-tracted, the question of pre-judgment interest was governed by Penn-sylvania law.

15. **Interest § 1— breach of contract actions — recovery of interest — Pennsylvania law**

Under Pennsylvania law interest is recoverable as a matter of right in actions for breach of contract only in cases falling within the provisions of Restatement of Contracts § 337(a), which provides for the recovery of interest as a matter of right only where non-

performance, not defective performance, constitutes the breach of contract sued on.

**16. Interest § 1; Sales § 19— breach of warranty — Pennsylvania law — damages for delay in compensation**

Under Pennsylvania law the jury in an action for breach of warranty has the discretion to award "damages for delay in compensation" in the amount of six percent per annum on any damages awarded for breach of warranty, calculated from the date of the breach to the date of the judgment on the verdict.

DEFENDANT appeals from decision of the Court of Appeals, 16 N.C. App. 498, upholding judgment of *McLean, J.,* 14 February 1972 Session, MECKLENBURG Superior Court.

Civil action to recover damages for breach of contract with respect to the sale and purchase of 150 trailers. When the case was called for trial "the plaintiff stipulated it would proceed on the theory of breach of implied warranty of fitness and for damages for said breach."

Allegations of the complaint pertinent to an understanding of the case appear in the following paragraphs (numbering ours):

1. Plaintiff is a Tennessee corporation with its home office in Nashville, Tennessee. It is engaged in the trucking industry as a common cargo carrier and operates in several states, including North Carolina, under its interstate Commerce Commission franchise.

2. Defendant is a trailer manufacturer incorporated in the State of Pennsylvania where its home offices are located. It has a place of business in Charlotte where it operates a sales, service and trailer repair shop. It has a factory in Chicago, Illinois.

3. On 10 July 1967 in the State of Pennsylvania, plaintiff entered into a contract with defendant to purchase 150 trailers, forty-two feet in length, at the agreed price of $5,695.00 each, for a total purchase price of $854,250.00. At the time the contract was entered into, the trailers were not in existence and were to be built by defendant and delivered to plaintiff f.o.b. Chicago factory in groups of fifty each on or about September 1, October 10, and October 25, 1967.

4. The trailers were received by plaintiff and placed in service. Soon thereafter as a result of gross weakness of the

structure of said vehicles, "they commenced breaking in-two when in use." Defendant acknowledged that the breaking was due to improper design and manufacture, requested plaintiff to deliver each of the 150 vehicles to defendant's repair facilities in St. Louis, Missouri, and Charlotte, North Carolina, "so that defendant could add further structural strength to said vehicles, which defendant claimed would remedy the structural defects in the vehicles." Plaintiff delivered the vehicles as requested, at great cost and inconvenience to plaintiff in addition to the loss suffered from loss of use of the trailers while they were being repaired.

5. The repairs made by defendant did not remedy the defect and some of the trailers continued to break in two, four being broken down and out of service when the complaint was filed on 21 July 1970.

6. Defendant refuses to make any further effort to eliminate the defects.

7. Plaintiff relied on defendant's skill and experience in the manufacture of the trailers, used them in a careful and prudent manner, and the damages plaintiff has suffered were proximately caused by defendant's breach of its implied contract.

8. Plaintiff has been damaged in the sum of $670,000.00.

Defendant denied all material allegations of the complaint, especially denying that there was an implied warranty or that there was any breach of warranty, or that the vehicles commenced breaking in two when in use, or that there was any gross weakness in the structure of the vehicles. Defendant averred and affirmatively pled that plaintiff had executed six Time Sale Contracts and Security Agreements, each of which contained a disclaimer of all warranties, express or implied. Based thereon, defendant alleges that there is no warranty of fitness for purpose or with respect to any other matter pertaining to the construction or design of the 150 trailers in question.

Plaintiff's evidence tends to show that on 20 October 1967 one of the trailers collapsed eight days after it was put in service while carrying a load of approximately 40,000 pounds and traveling at approximately forty-five miles per hour on an average two-lane road about five miles east of Ashley, Illinois.

The top of the trailer "more or less buckled out, rivets had burst out and the floor of it had swayed in." On 14 March 1968 another trailer collapsed. Defendant was notified of these failures and recalled all 150 trailers "to modify them." The trailers were returned and defendant, in the belief that the top rails were soft, reinforced them with an additional rail twenty feet long. Thereafter plaintiff used the trailers with no further major problems until the spring of 1970 when the trailers began collapsing or breaking in two again "right at the end of this twenty-foot section." Seven more collapsed in this fashion. Defendant was notified but declined to do anything further to correct the defects.

Plaintiff then offered evidence from its terminal manager in St. Louis, Missouri, and others that since the spring of 1970, pursuant to instructions from plaintiff's operations manager, the Strick trailers were used as much as possible for the light-type freight such as shoe accounts and bulky miscellaneous freight. Anything that has a concentrated weight "we normally try to keep off of these trailers."

In 1969, after installation of the twenty-foot reinforcement rails, defendant's representative, Mr. Lechette, told plaintiff he was familiar with the problems necessitating the reinforcement rails; that his opinion was "that the trailer had been built on 28-foot specifications in Chicago on double trailers instead of 42-foot specifications, which caused the problem."

Charles Youree, president of plaintiff corporation, testified that the value of each of the 150 Strick trailers at the time of their delivery in 1967 was approximately $3400 to $3500 per trailer. Mr. Youree further stated that, although his company usually depreciates trailers over a period of six years, trailers have a life expectancy of around eight years. He stated that the Strick trailers had been in service only two years and seven months when the rash of failures began in March 1970.

Defendant's evidence tends to show that beginning in August 1967 and continuing through 31 October 1967 defendant delivered to plaintiff the 150 trailers in lots of twenty-five. Upon each delivery plaintiff signed a "Time Sale Contract and Security Agreement" covering the twenty-five trailers delivered. Six such security agreements, all identical, were executed by plaintiff. No express warranties were contained in either the Purchase Order Contract or the Security Agreements. The

---

Transportation, Inc. v. Strick Corp.

---

Security Agreements, however, each contained in Paragraph (h) thereof the following language: "There are no promises, understandings, agreements, representations, or warranties (except the warranties set forth in the Sales Order if the goods covered hereby are new), express or implied, respecting the Equipment which are not specified herein. This instrument contains the entire agreement between the parties, is made and accepted in Pennsylvania, and shall be governed and interpreted according to the laws of Pennsylvania."

Defendant's evidence further tends to show that the top rail reinforcement work on the 150 trailers was carried out between 16 February and 19 July, 1968, with most of the trailers entering and leaving the shop the same day; that many of the side posts were either totally destroyed or seriously damaged by forklifts, hand trucks, loading crates and general freight cargo; that when the posts are knocked out or severely damaged the structural integrity of the unit is destroyed, causing failure in either the top rail or the bottom rail or both.

Ronald Lewis Zubko, defendant's chief engineer at the Chicago plant, responsible for the production engineering of the trailers in question, testified that these 42-foot trailers were not built on so-called 28-foot trailer frames; that Strick has never built a 28-foot double trailer; that the top rail specified for 42-foot trailers is completely different from the top rail specified for 27- or 28-foot doubles; that each of the 150 trailers in question was designed for a 55,000 pound payload, uniformly distributed, and the strength of the materials used was calculated to support 110,000 pounds dead weight, sitting on the ground without moving, and the materials in the trailers had been used for approximately twenty years.

Mr. Zubko further testified that he was familiar "with the soft top rail on these trailers"; that there are specific industry charts "which show the relationship between hardness in aluminum and its strength"; that tests to measure softness or hardness revealed that "this rail was something like 10 points under what we would expect it to be. This is about 15% reduction in the overall physical properties of this material. This is not a 15% off the weight carrying of the 110,000 pounds that I spoke of. . . . The reading of the test hardness meter could be almost down to half of the accepted level and the rail would still be strong enough to carry the load at the rated capacity."

Issues were submitted to and answered by the jury as follows:

"1. Did the defendant impliedly warrant to the plaintiff that the trailers sold by the defendant to the plaintiff were fit for the particular purpose for which the plaintiff purchased them?

ANSWER: Yes.

2. Did the defendant breach its contract with the plaintiff as alleged in the Complaint?

ANSWER: Yes.

3. In what amount, if any, is the defendant indebted to the plaintiff?

ANSWER: $215,600.00."

The trial judge signed judgment for the amount of the verdict and added interest thereon from 31 October 1967, the date on which the last twenty-five trailers were delivered to plaintiff. The defendant, having moved in apt time for a directed verdict, which was denied, filed a written motion for judgment notwithstanding the verdict or, in the alternative, to set the verdict aside and award defendant a new trial. This motion was denied and defendant appealed. The Court of Appeals found no error with Britt, J., dissenting, and defendant appealed to the Supreme Court as of right under G.S. 7A-30(2). Errors assigned will be discussed in the opinion.

*Welling & Miller by George J. Miller and Charles M. Welling; Schnader, Harrison, Segal & Lewis by W. P. Sandridge of Womble, Carlyle, Sandridge & Rice, for defendant appellant.*

*Wallace S. Osborne and Waggoner, Hasty & Kratt by William J. Waggoner, for plaintiff appellee.*

HUSKINS, Justice.

The sales contract here involved was executed in Pennsylvania but was to be performed, apparently, in Illinois. Although the applicable law is clear where a contract is made and is to be performed in the same foreign state, *Motor Co. v. Wood*, 238 N.C. 468, 78 S.E. 2d 391 (1953); *Price v. Goodman*, 226 N.C. 223, 37 S.E. 2d 592 (1946), no North Carolina case has determined what law applies where the place of performance *differs*

from the place of contracting. *See Arnold v. Charles Enterprises,* 264 N.C. 92, 141 S.E. 2d 14 (1965); Wurfel, Choice of Law Rules in North Carolina, 48 N.C. L. Rev. 243 (1970). In such a situation the traditional rule appears to be that matters of performance and damages for nonperformance are governed by the law of the place of performance. Restatement (First) of Conflict of Laws, §§ 358, 372, 413 (1934); 3 Williston, *Sales* § 589 (d) (1948). *But see* Restatement (Second) of Conflict of Laws, §§ 188, 205, 207 (1971); G.S. 25-1-105.

However, in the case before us the parties have not contended that any law other than the law of Pennsylvania shall govern. We proceed accordingly, noting only that the contract of sale did not attempt to choose the applicable law, but each of the six security agreements provided: "This instrument . . . is made and accepted in Pennsylvania, and shall be governed and interpreted according to the laws of Pennsylvania."

Therefore, the substantive issues in the case before us are to be resolved under the law of Pennsylvania, of which we are required to take judicial notice by G.S. 8-4. With respect to procedural matters, the law of North Carolina governs. *Arnold v. Charles Enterprises, supra.* "In the trial of an action whatever relates merely to the remedy and constitutes a part of the procedure, is determined by the law of the forum; but whatever goes to the substance of the controversy and affects the rights of the parties is governed by the *lex loci.*" *Wise v. Hollowell,* 205 N.C. 286, 171 S.E. 82 (1933). *Accord, Knight v. Associated Transport,* 255 N.C. 462, 122 S.E. 2d 64 (1961); *Clodfelter v. Wells,* 212 N.C. 823, 195 S.E. 11 (1937).

[1] At trial, plaintiff stipulated that it was not relying on the implied warranty of merchantability, Pa. Stat. Ann. tit. 12A, § 2-314 (1970). Therefore, the suit was only for breach of the implied warranty of fitness for a particular purpose, Pa. Stat. Ann. tit. 12A, § 2-315 (1970). Defendant now contends that such a suit is tenable only where the goods were purchased for a *particular* purpose. It further contends that this term does not embrace purchases of goods for the *general* purpose for which goods of that kind are used. Thus, defendant urges that plaintiff has failed to make out a case for the jury since it bought the trailers not for a particular purpose but rather for the general or ordinary purpose of hauling cargo. For this reason defendant assigns as error the overruling of its motion for directed verdict.

We find no merit in this assignment. Although the primary purpose of Pa. Stat. Ann. tit. 12A, § 2-315 (1970) is indeed to protect a buyer who purchases goods with the intention of using them in a "particular" manner, meaning a manner in which they would not normally be expected to be used, we do not think that section is limited exclusively to purchases of such a nature. That warranty also protects a buyer when his particular purpose *is* the general or ordinary purpose.

Although no cases have been found either expressly adopting or rejecting this construction of "particular purpose," Professor Nordstrom so construes that term. See Nordstrom *Sales* § 78 (1970) : "[I]f the buyer's use of the goods is the ordinary use of those goods, . . . the buyer's particular purpose coincides with the ordinary use of the goods, and *either section 2-314 or section 2-315* will give the buyer the protection he needs." (Emphasis added.) Such was also the rule at common law. See 46 Am. Jur. *Sales* § 346 (1943).

Despite the lack of authority expressly adopting this interpretation of "particular purpose," several cases have done so impliedly, without discussion of the issue. *See* Annot. 17 A.L.R. 3d 1010, 1071 (1968). Among these is *Adams v. Scheib,* 408 Pa. 452, 184 A. 2d 700 (1962). There, the Pennsylvania Supreme Court held that where plaintiff bought pork sausage for the purpose of consumption—obviously the ordinary purpose— an implied warranty arose, citing *both* Pa. Stat. Ann. tit. 12A, § 2-314 *and* § 2-315. See also *L & N Sales Co. v. Stuski,* 188 Pa. Super. 117, 146 A. 2d 154 (1958), where whiskey pourers were bought for the ordinary purpose of pouring drinks, and the Pennsylvania Superior Court, assuming that a warranty of fitness for a particular purpose arose under Pa. Stat. Ann. tit. 12A, § 2-315, held that such warranty was not excluded by an express warranty of merchantability or by a disclaimer contained in the purchase money security agreement executed after the sale.

Therefore, we think it beyond dispute that in Pennsylvania the warranty of fitness, Pa. Stat. Ann. tit. 12A, § 2-315 (1970), does protect a buyer whose particular purpose *is* the general or ordinary one.

[2] Under this construction *both* implied warranties would exist where the seller is a merchant with respect to goods of that kind, the buyer is buying the goods for the ordinary pur-

pose, and the requirements of Pa. Stat. Ann. tit. 12A, § 2-315 (1970) are met. Nothing in the Code prohibits such a double warranty. See Comment 2, Pa. Stat. Ann. tit. 12A, § 2-315 (1970) : "A contract may of course include both a warranty of merchantability and one of fitness for a particular purpose." Of course, in such a situation, the warranty of fitness will not normally be needed since there will also be a warranty of merchantability. However, in the case before us the warranty of fitness is needed since plaintiff stipulated away his warranty of merchantability.

Thus, plaintiff has chosen, for reasons obscure, to rely solely on the implied warranty of fitness—a warranty that is more difficult to prove than the implied warranty of merchantability. In so doing, he has made an inexplicable choice, but one not, as a matter of law, fatal to his claim for damages. Therefore, plaintiff's choice did not entitle defendant to a directed verdict.

The contract of sale was executed on 10 July 1967. Thereafter, plaintiff executed six separate security agreements, each covering twenty-five trailers. The first of these security agreements was dated 30 August 1967; the last, 31 October 1967. Each security agreement contains in Paragraph (h) thereof the following language: "There are no promises, understandings, agreements, representations, or warranties . . . , express or implied, respecting the Equipment which are not specified herein." Paragraph (h) is on page 2 of the security agreement, printed in the same color as the other printing and in the smallest print used on that page. On page 3 immediately preceding the signature lines, the words "NOTICE TO BUYER" are printed in block letters. Under these words in small print is this message: "This contract was prepared by Strick Corporation (seller). Do not sign this contract before you read it or if it contains any blank spaces."

Defendant contends the quoted portions of the security agreement exclude all implied warranties, and for this reason the overruling of its motions for directed verdict is assigned as error. Plaintiff contends the attempted exclusion is ineffective under the laws of Pennsylvania, and the trial judge and the Court of Appeals so held.

The Court of Appeals grounded its decision on the conclusion that the disclaimer, not being "conspicuous" within the

meaning of Pa. Stat. Ann. tit. 12A, §§ 2-316(2) and 1-201(10) (1970), was therefore ineffective as a matter of law. Many cases have adopted a like approach in applying the Code, refusing to give effect to a disclaimer where it is inconspicuous without further inquiry as to whether the buyer was protected from the surprise of an unexpected and unbargained disclaimer by factors other than the physical conspicuousness of the clause itself. *Eg. Entron Inc. v. General Cablevision of Palatka,* 435 F. 2d 995 (5th Cir. 1970); *Boeing Airplane Co. v. O'Malley,* 329 F. 2d 585 (8th Cir. 1964).

However, the purpose of the "conspicuous" requirement, despite its unqualified language, is, as stated in Comment 1, Pa. Stat. Ann. tit. 12A, § 2-316 (1970), to "protect a buyer from unexpected and unbargained language of disclaimer by . . . permitting the exclusion of implied warranties only by conspicuous language or *other circumstances which protect the buyer from surprise.*" (Emphasis added.) Although the emphasized language might refer only to Pa. Stat. Ann. tit. 12A, § 2-316(3) (1970), certainly *actual awareness of the disclaimer* is another circumstance which protects the buyer from the surprise of unexpected and unbargained language of disclaimer. Perhaps an additional circumstance of this sort arises where, as here, the buyer is a non-consumer with bargaining power substantially equivalent to the seller's.

Where both of these circumstances are shown—the buyer is a non-consumer on substantially equal bargaining terms with the seller and is actually aware of the disclaimer prior to entering the sales contract—possibly the disclaimer should be enforced despite its inconspicuousness, in the absence of a showing of unconscionability, since the purpose of the "conspicuous" requirement has been satisfied.

[3] However, we have found no authoritative Pennsylvania decision applying Pa. Stat. Ann. tit. 12A, § 2-316(2) (1970) in such fashion. Nor have we found an authoritative Pennsylvania decision applying that statute in the rigid fashion employed by the Court of Appeals. In this case, however, it is unnecessary for us to decide whether the "conspicuous" requirement has been satisfied by "other circumstances which protect the buyer from surprise" because the disclaimer here is inoperative by reason of Pa. Stat. Ann. tit. 12A, § 9-206(2) (1970).

That section reads as follows: "When a seller retains a purchase money security interest in goods the Article on Sales

(Article 2) governs the sale and any disclaimer . . . of the seller's warranties." Comment (3) says that this section "prevents a buyer from inadvertently abandoning his warranties by a 'no warranties' term in the security agreement when warranties have already been created under the sales arrangement. Where the sales arrangement and the purchase money security transaction are evidenced by only one writing, that writing may disclaim . . . warranties to the extent permitted by Article 2."

Thus, it appears that this section gives no effect to a disclaimer contained in a purchase money security agreement when express or implied warranties have already been created in the written sales arrangement. In such circumstances it is Article 2 of the Uniform Commercial Code, and not the terms of the security agreement, which governs the question of disclaimer.

The Pennsylvania Superior Court has recognized this principle in the form in which it existed in the Original Draft of the Uniform Commercial Code, adopted in Pennsylvania in 1953. See *L & N Sales Co. v. Stuski, supra* (188 Pa. Super. 117, 146 A. 2d 154), where the court, applying Pa. Stat. Ann. tit. 12A, § 9-206(3) (1954), which has since been repealed and its principle incorporated into the present § 9-206(2), said:

> "[T]he conditional sales contract, regardless of language contained therein, under the present circumstances cannot be considered as limiting or releasing plaintiff from liability on any warranty made by the seller at the time the sales contract was executed, since the security agreement was executed subsequent thereto for the purpose of securing the credit extended to the defendant."

Accordingly, the disclaimer, being in the purchase money security agreement, could not as a matter of law disclaim the implied warranties previously created in the written sales arrangement. This assignment of error is overruled.

[4] Defendant also contends that although the issue of "conspicuousness" was properly an issue for the court, Pa. Stat. Ann. tit. 12A, § 1-201(10), still there remained a question for the jury with respect to the validity of the disclaimer. It assigns as error the trial court's failure to submit an issue thereon. Under Pa. Stat. Ann. tit. 12A, § 2-316(3)(c) (1970) an implied warranty can be excluded "by course of dealing or course of

performance," and defendant asserts that the jury should have been allowed to determine if such occurred here.

However, there was only slight evidence of *any* "course of dealing" between the parties. See Pa. Stat. Ann. tit. 12A, § 1-205(1) (1970). And there was no evidence whatsoever showing the exclusion of warranties by the course of such dealing. Nor did the evidence with respect to "course of performance" raise an issue regarding exclusion of implied warranties. Instead, the evidence tends to show that both parties believed there was a warranty throughout the entire course of performance under the contract and acted accordingly. Therefore, no question for the jury existed with respect to the disclaimer; and the failure to submit an issue thereon was not error.

We have already discussed the ineffectiveness of the disclaimer. And since plaintiff has in addition made a factual showing, sufficient to go to the jury, of the existence of an implied warranty of fitness for a particular purpose under Pa. Stat. Ann. tit. 12A, § 2-315 (1970), its breach, the giving of notice of such breach within a reasonable time thereafter as required by Pa. Stat. Ann. tit. 12A, § 2-607(3)(a) (1970), and of the proper measure of damages for such breach under Pa. Stat. Ann. tit. 12A, § 2-714(2) (1970), it follows that defendant's motions for directed verdict were properly denied.

[9] Defendant contends that plaintiff's witness Guinn was improperly allowed to give evidence concerning the fair market value of the trailers in June 1970; that the same error was committed with respect to the testimony of plaintiff's witness Lentz concerning fair market value in January 1972; and that it was also error to permit plaintiff's witness Berry to testify with respect to what it would cost to repair the trailers at some unspecified time in 1970.

[5] The measure of damages for breach of warranty, when the buyer retains the goods and sues for the loss of bargain occasioned by the failure of the goods to conform to the warranty, is "the difference *at the time and place of acceptance* between the value of the goods accepted and the value they would have had if they had been as warranted. . . . " Pa. Stat. Ann. tit. 12A, § 2-714(2) (1970). (Emphasis added.)

Here, the contract of sale provided that delivery was to be "F.O.B. Chicago plant, 30 New/wk. begin. wk. of Aug. 7

& 14th. Thereafter 15-20/wk. until balance of order completed."
The first delivery was made "toward the end of August . . . it
was close to the first of September, 1967." Apparently, the
actual date was 30 August 1967, the date of the first of the
six security agreements. The entire order was completed within
"two or three months"—apparently on 31 October 1967, the date
of the last of the six security agreements.

Thus, the *proper* time for a determination of the value of
the trailers under Pa. Stat. Ann. tit. 12A, § 2-714(2) was the
period from 30 August 1967 through 31 October 1967, the time
during which delivery and acceptance of the trailers occurred.
However, the opinions of witnesses Guinn and Lentz were,
respectively, opinions of the value of the trailers more than
two and one half and five years after the time of acceptance.

[6] With respect to the admissibility of this testimony, we
look to our own law, since questions of the admission and
exclusion of evidence are generally considered procedural and
governed by the *lex fori. Howard v. Howard,* 200 N.C. 574, 158
S.E. 101 (1931) ; Restatement (Second) of Conflict of Laws
§ 138 (1971) ; Leflar, *American Conflicts Law* § 123 (1968).

[7] Where the value of personal property at a given point
in time is in issue, evidence of its value within a reasonable
time before or after such point is competent as bearing upon
its value at the time in issue. *Newsome v. Cothrane,* 185 N.C.
161, 116 S.E. 415 (1923). Evidence of the property's value
beyond a reasonable time before or after that point lacks
probative force and is incompetent. *Highway Comm'n v. Hart-
ley,* 218 N.C. 438, 11 S.E. 2d 314 (1940) (real property). See
31A C.J.S. Evidence § 183(5) (1964) : "[E]vidence of value
is relevant only when directed to value at the time in question,
or at a time so near thereto that it may reasonably be
expected to throw some light on the value at such time. Evidence
of value a considerable time . . . after the time in question is
not admissible, in the absence of further evidence showing
either that the value remained the same, or the comparative
values on the two occasions."

[9] The testimony of Guinn and Lentz was thus improperly
admitted, since "[t]here is a fundamental postulate of evidence
that circumstances which are irrelevant to the existence or
nonexistence of the disputed facts are not admissible." *Godfrey
v. Power Co.,* 190 N.C. 24, 128 S.E. 485 (1925).

Although the admission of irrelevant evidence is not grounds for reversal unless it would tend to mislead or confuse the jury or prejudice the party against whom it is offered, *Deming v. Gainey,* 95 N.C. 528 (1886), we think such was the likely impact of this evidence upon the jury here. This is especially so in light of the judge's erroneous instruction that "you may consider this evidence as bearing upon the fair market value of the trailers at the time they were delivered to plaintiff."

[8, 9]  The above discussion applies with equal force to the testimony of plaintiff's witness Berry with respect to the cost of repairing the trailers as of some unspecified time in 1970. Although the cost of repairs may be competent as tending to show the difference between the value of the goods as warranted and as delivered, *Wagner Tractor Inc. v. Shields,* 381 F. 2d 441 (9th Cir. 1967) ; *Meyers v. Antone,* 227 A. 2d 56 (D.C. Ct. App. 1967), such evidence must likewise be confined to a point in time reasonably proximate to the date of delivery.

Accordingly, this assignment of error is sustained. Defendant is entitled to a new trial on the issue of damages.

[10]  We note that at the first trial, defendant introduced no evidence tending to show the amount, if any, by which its repairs increased the value of the trailers above their value at delivery. Plaintiff introduced no evidence tending to show incidental or consequential damages resulting from the seller's breach of warranty. Should either party offer evidence on these matters on retrial, it will be the duty of the court to instruct the jury with respect to the significance of such evidence. Regarding the repairs made by defendant, the jury should be instructed that the measure of damages established by Pa. Stat. Ann. tit. 12A, § 2-714(a) (1971) (that is, the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted) should be reduced by the amount, if any, by which the repairs enhanced the value of the trailers. *See Marsh v. McPherson,* 105 U.S. 709, 26 L.Ed. 1139 (1881). With respect to incidental and consequential damages, the jury should be instructed in accordance with Pa. Stat. Ann. tit. 12A, § 2-715 (1971).

[11]  Of necessity, a new trial on the issue of damages also requires a new trial on the issue as to breach of warranty because the jury that assesses the damages should be the same

jury that determines whether, *and to what extent,* the fitness warranty was breached.

In regard to this issue, defendant contends that plaintiff's evidence shows, at best, that the fitness warranty was breached with respect to only nine of the 150 trailers since 141 trailers were still in service. From this, defendant argues that it was error to permit the jury to find that *more* than nine trailers failed to conform to the warranty and to award damages therefor.

[12] In essence, this argument appears to be that *each and every* commercial unit in an order of goods manufactured under the same specifications must be shown to have become totally unusable before recovery may be had for breach of warranty with respect to the entire order. As such, this argument is untenable.

[13] In the first place, it need not be shown that any given unit is totally unusable before a breach of warranty occurs. It is enough that the unit is unfit for use in the manner warranted by the seller. In addition, the evidence shows that the 150 trailers constituted one order and were manufactured under the same specifications. One of the trailers collapsed eight days after it was put in service while carrying a normal load under normal conditions. About five months later a second trailer collapsed. Defendant thereupon recalled all 150 trailers "to modify them," in the belief that the top rails were soft, and did so by reinforcing the top rails with an additional rail twenty feet long. The trailers were then used without further major problems for about two years when they again commenced breaking in two "right at the end of this 20-foot section." Seven more collapsed in this fashion in a relatively short period of time. Thereafter, the trailers were used as much as possible to haul light-type freight. Each driver of the nine trailers which collapsed testified that he had never before experienced a similar failure with any kind of trailer. We hold that this evidence entitles plaintiff to go to the jury on the breach of warranty issue with respect to all 150 trailers. It is for the jury to determine, under proper instructions, whether the fitness warranty was breached as to all, part or none of the 150 trailers, and assess the damages accordingly.

Finally, defendant contends that the trial court improperly added pre-judgment interest from 31 October 1967 to the $215,600.00 verdict rendered by the jury. This covered a period

of about four years and four months and amounted to almost $56,000.00 in interest.

We must first decide what law is applicable. On questions of damages, the majority view seems to be that the law of the forum does not apply since the measure of recovery is a substantive matter. *See* 22 Am. Jur. 2d *Damages* § 3 (1965). Instead, where the action is for breach of contract, damages will usually be controlled by the law of the place of performance. Leflar, *American Conflicts Law* § 151 (1968); Restatement (First) of Conflict of Laws § 413 (1934). *But see* Restatement (Second) of Conflict of Laws §§ 188, 207 (1971).

[14] However, in the case before us we are proceeding under the substantive law of Pennsylvania, the place where the contract was made. And since the question of pre-judgment interest, like damages generally, is a substantive matter, we apply Pennsylvania law. *Cf. Davenport v. Webb*, 11 N.Y. 2d 392, 230 N.Y.S. 2d 17, 183 N.E. 2d 902 (1962), holding that the question of pre-judgment interest on a claim for wrongful death is a substantive matter governed not by the law of the forum but by the *lex loci. See also* Annot., 68 A.L.R. 2d 1337 (1959).

The law of Pennsylvania with respect to pre-judgment interest is unclear. Indeed, where the suit is in equity, all attempts to formulate rules have been abandoned and the matter is left to the sound discretion of the Chancellor: he is to "allow interest in accordance with principles of equity, in order to accomplish justice in each particular case." *Murray Hill Estates v. Bastin*, 442 Pa. 405, 276 A. 2d 542 (1971).

However, where the suit is at law, confusion abounds. *See* Comment, Allowance of "Interest" on Unliquidated Tort Damages in Pennsylvania, 75 Dick. L. Rev. 79 (1970). As best we can ascertain, the rule appears to be that interest proper is allowed as a matter of right, but only in a small class of cases. In order to alleviate the harshness of this narrow rule, something called "damages for delay in payment" or "compensation for detention" of money owed, computed at the legal rate of interest, may be awarded in the discretion of the trier of fact in practically any case where true interest is not allowable. Following is an excellent statement of this "damages for delay" rule:

> "Interest as such is recoverable only where there is a failure to pay a liquidated sum due at a fixed day, and the

debtor is in absolute default. It cannot, therefore, be recovered in . . . actions of any kind where the damages are not in their nature capable of exact computations, both as to time and amount. . . . But there are cases . . . of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where also the compensation can be measured by market value, or other definite standards. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully compensated unless he receive, not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages, in the nature of interest, for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure." *Richards v. Citizens Natural Gas Co.*, 130 Pa. 37, 18 A. 600 (1889).

The rule of *Richards* limiting true interest strictly to liquidated claims appears to have been followed in tort actions for damage to property. *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 263 A. 2d 336 (1970) (holding that interest is not proper on unliquidated tort claims but that damages for delay are awardable in the discretion of the trier of the facts). This "damages for delay" rule has also been followed in eminent domain proceedings. *Rednor & Kline Inc. v. Dept. of Highways,* 413 Pa. 119, 196 A. 2d 355 (1964) ; *Wolf v. Commonwealth,* 403 Pa. 499, 170 A. 2d 557 (1961). In each of these cases the damages were ascertainable by computation with reference to market value, but were not strictly "liquidated."

However, the rule of *Richards* has not been consistently followed in actions for breach of contract. The rule was followed in *Babayan v. Reed,* 257 Pa. 206, 101 A. 339 (1917), where suit on an unliquidated claim for breach of contract, the damages being easily ascertainable by computation, was held a proper case for award of "damages for delay in compensation."

Yet, in *Palmgreen v. Palmer's Garage,* 383 Pa. 105, 117 A. 2d 721 (1955), the court upheld an award of true interest as of right in an action for breach of contract, since the damages, though not liquidated, were "ascertainable by computation." The court cited neither *Babayan* nor *Richards* and did not mention

"damages for delay in compensation." Instead, it relied upon *West Republic Mining Co. v. Jones & Laughlins*, 108 Pa. 55 (1884), in which interest was held proper upon a claim for breach of contract that was unliquidated, but "ascertainable by computation." However, that case was decided prior to the *Richards* case, and also prior to what was apparently the first case to make the distinction between true interest and "damages for delay in compensation," *Township of Plymouth v. Graver*, 125 Pa. 24, 17 A. 249 (1889).

Then in *Penneys v. Pennsylvania R. R. Co.*, 408 Pa.· 276, 183 A. 2d 544 (1962), the court again failed to adhere to its distinction between true interest and "damages for delay in compensation." There, the damages were unliquidated but "ascertainable by computation." It was contended that since the damages were unliquidated, the award of *interest* was improper. The court rejected this contention without discussion, adopted the rule of the Restatement of Contracts § 337 (a) as determinative of the question as to when interest may be recovered, and awarded interest thereunder. Again, no mention was made of "damages for delay in compensation." In addition, the *Babayan* case was cited for the proposition that interest is allowable on unliquidated contract claims, though that case in fact appears to say that "damages for delay in compensation" are proper in such circumstances.

[15] From the foregoing discussion we can only conclude that in actions for breach of contract interest as such, under Pennsylvania law, is recoverable as a matter of right in cases falling within the provisions of Restatement of Contracts § 337 (a) (1932). *But see Ben Construction Co. v. Sanitary Authority*, 424 Pa. 40, 225 A. 2d 886 (1967). We further conclude that nothing in Pennsylvania law permits the trial judge, in his discretion, to add interest to the jury's verdict. The Restatement of Contracts § 337 (b), permitting such a discretionary award by the court, has never been adopted in Pennsylvania.

So, with a dim light for guidance, we first determine whether this case fits the rule of Restatement § 337 (a). If so, interest is recoverable as of right. If not, we must then decide whether "damages for delay in compensation," calculated at six percent per annum on the sum awarded as damages for breach of warranty, may be awarded by the jury in its discretion under Pennsylvania law.

Restatement of Contracts § 337 reads as follows:

"§ 337. WHEN INTEREST IS RECOVERABLE AS DAMAGES.

"If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

"(a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt of money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

"(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discretion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due."

As heretofore noted, Subsection (b) has not been adopted in Pennsylvania so there can be no award of interest "in the discretion of the court" under Subsection (b).

Plaintiff is not entitled to recover interest *as a matter of right* under Subsection (a) because the evidence does not bring this case within its provisions. We hold that Subsection (a) was intended to provide for the recovery of interest as a matter of right only where *nonperformance,* not *defective performance,* constitutes the breach of contract sued upon. Here, the established market price of each trailer as warranted was $5,695.00. That figure represents the value of the promised performance. Had defendant delivered no trailers whatsoever, then it would have committed a breach of contract "to render a performance the value of which in money . . . is ascertainable . . . from established market prices of the subject matter." In such event $5,695.00 per trailer would constitute the measure of damages and interest thereon would be recoverable as a matter of right under Section 337 (a). This is justified on the theory that where the damages are ascertainable the defendant can tender that amount and avoid the accrual of interest. But such is not our case. Here, a defective, faulty performance constitutes the breach

of contract sued upon. Since the established market price is not the measure of damages in such case, and no other formula contained in Section 337(a) is applicable, plaintiff therefore cannot recover interest as a matter of right under Section 337(a).

[16]  It is our opinion, and we so hold, that under the case law of Pennsylvania the jury in its discretion may award "damages for delay in compensation" in this case. *Richards v. Citizens Natural Gas Co., supra; Babayan v. Reed, supra.* Upon retrial the judge should instruct the jury that it may, in its discretion, award as "damages for delay in compensation" six percent per annum on any damages awarded for breach of warranty, calculated from the date of the breach to the date of the judgment on the verdict.

That defendant impliedly warranted that the 150 trailers were fit for the particular purpose for which the plaintiff purchased them has been established by the verdict of the jury in the trial below. The verdict on that issue stands. On retrial appropriate issues shall be submitted to the jury as to whether and to what extent defendant breached the implied warranty of fitness and what amount, if any, plaintiff is entitled to recover for breach of warranty. The question of interest as "damages for delay in compensation" shall be left to the jury's discretion under appropriate instructions.

For the reasons stated the decision of the Court of Appeals upholding the judgment of the trial court is erroneous. Let the case be remanded to the Superior Court of Mecklenburg County for retrial in accordance with this opinion on appropriate issues relating to breach of warranty and damages.

Error and remanded.