Donald L. DAVIS and Juanita J. Davis, Plaintiffs,

v.

**DILS MOTOR COMPANY; Robert E. Root, Jr.; Associates Commercial Corporation, Defendants.**

**Civ. A. No. 81–0077–P(H).**

United States District Court, S.D. West Virginia, Parkersburg Division.

July 1, 1983.

Thomas R. Zimmerman, Parkersburg, W.Va., for plaintiffs.

Orville L. Hardman, Charles V. Renner, Renner, Everett & Powell, Parkersburg, W.Va., for Dils Motor Co. and Robert E. Root, Jr.

Michael L. Bray, Steptoe & Johnson, Clarksburg, W.Va., for Associates Commercial Corp.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

The Plaintiffs bring this action, pursuant to 15 U.S.C. § 1989, to recover monetary damages and attorney fees against the Defendants for having allegedly violated the odometer disclosure requirements contained in Subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981, *et seq.*, with respect to their purchase of a used truck from the Defendants during April, 1981. The Plaintiffs have also brought pendent State law claims against the Defendants for breach of warranties and misrepresentations. Currently pending before the Court are the Defendants' motions for summary judgment on the Plaintiffs' odometer claim, as well as the Defendant Dils Motor Company's motion for summary judgment on the Plaintiffs' breach of warranties claim. For the reasons set out

below, the Court hereby grants Dils Motor Company's motion for summary judgment with respect to the Plaintiffs' claim for breach of the implied warranty of fitness, but otherwise denies the aforementioned motions.[1]

### I. Applicability of the Federal Odometer Requirements

■ Relying on the Secretary's exemption of vehicles which have a gross vehicle weight rating[2] of more than 16,000 pounds,[3] the Defendants maintain that the odometer disclosure requirements[4] were not applicable to their transfer of the 1978 Ford tractor to the Plaintiffs on April 11, 1981, inasmuch as it weighs 18,860 pounds[5] and has a gross vehicle weight rating of 73,280 pounds.[6] While the Plaintiffs do not contest the fact that the tractor has a gross vehicle weight rating in excess of 16,000 pounds, they do argue that the Secretary's exemption of such vehicles from the odometer disclosure requirements is void.

In *Lair v. Lewis Service Center, Inc.,* 428 F.Supp. 778 (D.Neb.1977), the court held that the Secretary's exemption of vehicles which have a gross vehicle weight rating of more than 16,000 pounds from the odometer disclosure requirements is void, inasmuch as it is "plainly at odds with the broad definition of motor vehicles employed by the statute."[7] *Id.,* at 781, *citing U.S. v. Maxwell,* 278 F.2d 206, 210 (8th Cir.1960) ("It is established law that legislative power rests in Congress and that the will of Congress as unambiguously expressed in a properly enacted statute cannot be amended or altered by regulation .... [A] regulation to the extent it is in direct variance with an unambiguous statutory provision is clearly void.")

On the basis of Chief Judge Urbom's cogent and persuasive analysis in *Lair,*[8] the Court holds that the Secretary's exemption of vehicles which have a gross vehicle weight rating of more than 16,000 pounds

---

1. *Cf., Prete v. Royal Globe Insurance Co.,* 533 F.Supp. 332, 333 n. 2 (N.D.W.Va.1982).

2. The term " '[g]ross vehicle weight rating' ... means the value specified by the manufacturer as the loaded weight of a single vehicle." *See* 49 C.F.R. § 571.3(b) (1980).

3. *See,* 49 C.F.R. § 580.5(a)(1) (1980).

4. *See,* 15 U.S.C. § 1988(a), (b); 49 C.F.R. § 580.4 (1980).

5. *See,* Pickens, Sommervill and Root affidavits, attached to the Defendants' motions for summary judgment on Count Three of the complaint, filed May 13 and 16, 1983.

6. *See,* Exhibits A & B, attached to the Plaintiffs' request for admissions from the Defendant Associates Commercial Corporation, filed April 13, 1982.

7. "Section 1988 applies to the transfer of a 'motor vehicle.' That term is defined at 15 U.S.C. § 1901(15): 'The term "motor vehicle" means any vehicle driven or drawn by mechanical power manufactured primarily for use on the public streets, roads, and highways, except any vehicle operated exclusively on a rail or rails.'

\* \* \* \* \* \*

Section 1901 is the general compilation of definitions used in the four subchapters of the Motor Vehicle Information and Cost Sav-

ings Act. Included among the definitions of § 1901 are definitions for a 'passenger motor vehicle'[5] and 'multi-purpose passenger vehicles'.[6] The use of the term 'motor vehicle' in § 1988, defined so broadly in § 1901(15), when juxtaposed with the narrowing definitions of §§ 1901(1) and (2) as applied to other subchapters of the Act, appears to leave little room for a regulatory exemption to the term 'motor vehicle.'

---

[5] Section 1901(1) states: "The term 'passenger motor vehicle' means a motor vehicle with motive power, designed for carrying twelve persons or less, except (A) a motorcycle or (B) a truck not designed primarily to carry its operator or passengers." The term is used in the subchapter of the Act dealing with bumper standards and consumer information study.

[6] Section 1901(2) states: "The term 'multi-purpose passenger vehicle' means a passenger motor vehicle which is constructed either on a truck chassis or with special features for occasional off-road operation." The term is used in the subchapter of the Act dealing with bumper standards; the Secretary of Transportation is therein granted authority to exempt partially or completely such vehicles."

*Lair v. Lewis Service Center, Inc., supra,* at 780–81.

8. The Court is unaware of any other published opinions which have addressed the validity of 49 C.F.R. § 580.5(a)(1).

from the odometer disclosure requirements is void and, accordingly, denies the Defendants' motion for summary judgment on Count Three of the complaint.

### II. *Plaintiffs' Breach of Warranties Claim*

■ On April 11, 1981, the Plaintiff, Donald L. Davis, purchased a 1978 Ford Model CLT 9000 tractor, Serial No. X91DVAE5039, from the Defendant, Dils Motor Company, pursuant to the terms of invoice number U 0956[9] and of a contemporaneously[10] executed security agreement.[11] Immediately above the Plaintiff's signature on the invoice appears the following language:

> "Purchaser has read all of the provisions on both the face and reverse side of this Order, including the reference to warranty and NO WARRANTIES OF MERCHANTABILITY OR FITNESS. The Purchaser agrees that all such provisions are part of this Order and that this Order supersedes any prior agreement and is the complete and exclusive agreement on the subject matters covered by this Order .... SEE REVERSE SIDE FOR INFORMATION ON WARRANTIES."

On the reverse side of the invoice appears the following language:

> "If said vehicle is delivered during said warranty period to DILS FORD for replacement and/or repairs, all parts and accessories required for such replacements and/or repairs, if available will be furnished by said dealer at a cost of 50% discount on parts and labor which must be done in DILS FORD U/C REPAIR SHOP.
>
> \* \* \* \* \* \*
>
> The terms and conditions of this DILS FORD USED CAR WARRANTY are only those stated herein and dealer nei-

ther assumes nor authorizes any person to assume for him any other liability express or implied in connection with the sale of said vehicle.

\* \* \* \* \* \*

### WARRANTY DISCLAIMER—USED CARS

\* \* \* \* \* \*

> Loss of time, inconvenience, loss of the vehicle, commercial loss, or consequential damages are not covered.
>
> There is no other express warranty on company supplied replacement parts and accessories except that such obligation as the company may have assumed in its warranty and policy manual or other separate written instrument, and any and all implied warranties of fitness and merchantability shall be limited to the duration of this warranty ...."

Inasmuch as the invoice does not expressly indicate that the Plaintiff purchased the truck "as is",[12] the Court must consider whether the above language was sufficient to either waive or modify the implied warranties of merchantability[13] and fitness.[14] In resolving this issue, the Court must apply the standards set forth in *W.Va.Code,* § 46–2–316(2), which provides that in order for language:

> "[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' "

---

9. *See* Exhibit B, attached to the Defendant Dils Motor Company's motion for summary judgment, filed May 16, 1983.

10. *See* May 31, 1982, deposition of Donald L. Davis at 23–26.

11. *See* Exhibit A, attached to the Defendant Dils Motor Company's motion for summary judgment, filed May 16, 1983.

12. *See, W.Va.Code,* § 46–2–316(3)(a).

13. *See, W.Va.Code,* § 46–2–314.

14. *See, W.Va.Code,* § 46–2–315.

The language on the front of the invoice conspicuously[15] refers the purchaser to the references "to warranty and No Warranties of Merchantability or Fitness" which appears on the reverse side of the invoice. When construing the above disclaimer language by resolving all ambiguities against its drafter,[16] the Defendant Dils Motor Company, it appears that the Plaintiff did waive the implied warranty of fitness, inasmuch as the invoice provided that "the terms and conditions of this DILS FORD USED CAR WARRANTY are only those stated herein".[16A] With respect to the implied warranty of merchantability, however, it appears that the Defendant Dils Motor Company only limited it to a period of thirty days on any subsequently replaced parts and accessories. The Court finds, however, that the Defendant's disclaimer language cannot be extended to operate as a general waiver of the implied warranty of merchantability with respect to the initial sale of the used tractor. Accordingly, the Court finds that the Plaintiff did not waive the implied warranty of merchantability when he executed the invoice on April 11, 1981.

■ The issue remains, however, as to whether the Plaintiff waived the implied warranty of merchantability when he contemporaneously executed the security agreement, which conspicuously provided in pertinent part as follows:

"DISCLAIMER: There are no warranties other than those made by the manufacturer of the Collateral. SELLER MAKES NO REPRESENTATIONS OR WARRANTIES, EXPRESS OR IMPLIED, AS TO THE QUALITY, WORKMANSHIP, DESIGN, MERCHANTABILITY, SUITABILITY, OR FITNESS OF THE COLLATERAL FOR ANY PARTICULAR PURPOSE, OR ANY OTHER REPRESENTATION OR WARRANTY WHATSOEVER, EXPRESS OR IMPLIED, unless such warranties are in writing and signed by Seller. Seller shall not under any circumstances be liable for loss of anticipatory profits or consequential charges."

In addressing this issue, the Plaintiff maintains that the Court should disregard the disclaimer found in the security agreement, inasmuch as *W.Va.Code,* § 46–9–206(2) "prevents a buyer from inadvertently abandoning his warranties by a 'no warranties' term in the security agreement when warranties have already been created under the sales arrangement."[17] While the Plaintiffs have correctly stated the law with respect to the effect of a conflicting warranty disclaimer clause in a *subsequently* executed security agreement,[18] they have apparently ignored the fact that the invoice and security agreement at bar were contemporaneously executed on April 11, 1981.[19] The more precise rule of law which is applicable to this action, therefore, is that the terms of the purchase order and of the security agreement, "[h]aving been executed together, ... should be construed together *in the absence of [a] conflict of terms." See, Gil-*

---

15. *See, W.Va.Code,* § 46–1–201.

16. *See, Nisbet v. Watson,* 251 S.E.2d 774, 780 (W.Va.1979).

16A. The Court finds that the Plaintiffs' purchase of the 1978 Ford tractor from the Defendants on April 11, 1981, was *not* a "consumer transaction", inasmuch as Donald L. Davis was then operating a trucking business. *See,* May 31, 1982, deposition of Donald L. Davis at 7–10. *Cf., W.Va.Code,* § 46A–6–102(b). Accordingly, the provisions of *W.Va.Code,* § 46A–6–107, which voids a merchant's attempt to waive the implied warranties of merchantability and fitness, are inapposite.

17. *See,* Official Comment to *W.Va.Code,* § 46–9–206(2). *W.Va.Code,* § 46–9–206(2) provides: "When a seller retains a purchase money security interest in goods the article on sales (Article II) [§ 46–2–101, *et seq.*] governs the sale and any disclaimer, limitation or modification of the seller's warranties."

18. *Cf., Tennessee Carolina Transportation, Inc. v. Strick Corp.,* 283 N.C. 423, 196 S.E.2d 711 (1973); *L. & N. Sales Company v. Stuski,* 188 Pa.Super.Ct. 117, 146 A.2d 154 (1958).

19. *See* footnote 10, *supra.*

*liam v. Indiana National Bank,* 337 So.2d 352, 355 (Ala.Civ.App.1976) (emphasis added). In applying this rule to the case at bar, the Court is compelled to disregard the clear waiver language found in the security agreement, inasmuch as it conflicts with the ambiguous waiver provisions contained in the purchase order. *Cf., W.Va.Code,* § 46–9–206(2).

■ The Defendant further argues that the Plaintiffs waived the implied warranty of merchantability when the Plaintiff, Donald L. Davis, inspected the tractor before he purchased it.[20] Considering the present state of the record, however, the Court finds that further inquiry into the facts is needed in order to clarify (1) whether the Plaintiff's inspection of the tractor "ought in the circumstances to have revealed [the alleged defects] to him", and (2) whether "the defects giving rise to the alleged breach did not arise until after the buyer's examination of the goods ...." *Cf., Mountaineer Contractors, Inc. v. Mountain State Mack, Inc.,* 268 S.E.2d 886 (W.Va. 1980).

Accordingly, the Court hereby grants the Defendant Dils Motor Company's motion for summary judgment on the Plaintiffs' claim for breach of the implied warranty of fitness, but denies the same with respect to the Plaintiffs' claim for breach of the implied warranty of merchantability.

---

20. *W.Va.Code,* § 46–2–316(3)(b) provides: "Notwithstanding subsection (2) ... when the buyer before entering into the contract has examined the goods ... as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him ...."