## HUSSEY METALS DIVISION OF COPPER RANGE COMPANY

v.

## LECTROMELT FURNACE DIVISION, McGRAW EDISON COMPANY.

### Civ. A. No. 71–362.

United States District Court,
W. D. Pennsylvania.

July 29, 1976.

Frank Gaffney, Pittsburgh, Pa., for plaintiff.

David Buerger, Pittsburgh, Pa., for defendant.

## OPINION

KNOX, District Judge.

Plaintiff has filed a motion to mold a judgment in its favor by adding $168,270, representing pre-judgment interest from May 1, 1967, to March 15, 1976, to the jury verdict of $316,000 against the defendant in a diversity action for breach of contract. This motion is being considered by leave of the U.S. Court of Appeals for the Third Circuit where defendant's appeal from the jury verdict and entry of judgment is pending. This motion is treated as a motion to alter or amend a judgment under Rule 59(e).

This dispute arises from the design, construction and installation of a large electromagnetic channel-type furnace for melting, holding and superheating copper. In 1967, when this furnace was designed, it was possibly the world's largest copper furnace, although there are now larger such furnaces in operation. The furnace in question had a molten copper capacity of up to 40,000 pounds and was powered by two 600 kilowatt inductors.

The parties entered into three separate written contracts concerning this furnace. After the equipment contract was initially awarded for the furnace itself, defendant was asked to undertake the engineering and design for the installation. Thereafter, defendant was given the contract to make the installation. The furnace was duly produced, delivered and installed. This dispute is over whether the furnace worked properly. Plaintiff alleged that the furnace's operations were plagued with mechanical failures and that the furnace never met the production standards required by the contract specifications. Defendant admitted to certain initial problems, but says it corrected these and that the problems were mainly caused by plaintiff's poor operating procedures and maintenance programs.

The jury found in favor of plaintiff for $316,000 and at the court's direction found for defendant on its counterclaim in the amount of $45,000. The jury also found that plaintiff had "accepted" the furnace, as "accepted" is used in § 2–607 of the Uniform Commercial Code, on May 12, 1969. Judgments were entered accordingly with "interest as provided by law."

■ At the outset we hold that the parties waived a jury trial on the question of pre-judgment interest. During the trial lasting approximately six weeks the court expressed the opinion to counsel that instructing the jury on interest would add hopeless confusion to a damage question that was already almost unmanageable, and that the question of interest could be handled separately by the court. Plaintiff did not take exception to the court's failure to instruct the jury on awarding interest (or compensation for the delay in payment.) Rule 51 F.R.C.P. requires objections to the giving or failing to give instructions must be made before the jury retires "stating distinctly the matter to which he objects and the grounds of his objection". To the extent that the allowance of interest may be a question for the trier of fact rather than one of law, we hold that the court has been entrusted with that fact-finding duty.

■ Whether or not pre-judgment interest is recoverable under Pennsylvania law which controls this case is not readily generalized. In tort cases, interest *eo nomine*, that is, interest under the name of interest, is not recoverable. Nevertheless, as re-affirmed in *Marrazzo v. Scranton Nehi Bottling Co.*, 438 Pa. 72, 263 A.2d 336 (1970):

" '. . . there are cases sounding in tort, and cases of unliquidated damages, where not only the principle on which the recovery is to be had is compensation, but where, also, the compensation can be measured by market value or other definite standard. Such are cases of the unintentional conversion or destruction of property, etc. Into these cases the element of time may enter as an important factor, and the plaintiff will not be fully

compensated unless he receive not only the value of his property, but receive it, as nearly as may be, as of the date of his loss. Hence it is that the jury may allow additional damages in the nature of interest for the lapse of time. It is never interest as such, nor as a matter of right, but compensation for the delay, of which the rate of interest affords the fair legal measure.' *Richards v. Citizens Natural Gas Company,* 130 Pa. 37, 40, 18 A. 600 (1889)."

█ In cases where compensation for detention of damages or delay in payment may be recoverable, the onus for the delay falls upon the party responsible for the delay. For example, a plaintiff who makes an "excessive and unconscionable demand" may not penalize a defendant who is forced to protect himself by litigation. *Pierce v. Lehigh Valley Coal Co. (No. 2),* 232 Pa. 170, 81 A. 142 (1911).

The distinction between interest and compensation for delay in payment measured by the legal rate of interest has been criticized, and Pennsylvania is one of few jurisdictions that still maintains such a distinction. The confusion over this area of law and its changing ramifications is revealed in *Tennessee Carolina Transportation, Inc. v. Strick Corp.,* 283 N.C. 423, 196 S.E.2d 711 (1973) (decided under Pennsylvania law) and in Comment, Allowance of "Interest" on Unliquidated Tort Damages in Pennsylvania, 75 Dickinson L.Rev. 79 (1970). In *Richards v. Citizens Natural Gas Co.,* 130 Pa. 37, 18 A. 600 (1889), the court itself recognizing the confusion in the state of the law, stated:

". . . The contest has been whether the allowance should be made or not, and the name by which it should be called, whether interest or compensation for delay, measured by the rate of interest, received little attention, and it was incautiously said that interest was or was not to be allowed. The distinction, however, is important, for failure to observe it leads to confusion, as in the present case. Interest is recoverable of right, but com-

pensation for deferred payment in torts depends on the circumstances of each case. The plaintiff may have set his damages so inordinately high as to have justified the defendant in refusing to pay, or in other ways the delay may be plaintiff's fault; or the liability of defendant may have arisen without fault, . . . In such cases the jury probably would not and certainly ought not to make the allowance."

While these principles are said to apply to actions sounding in tort,[1] many of the cases including Marrazzo itself involve the loss of use of property, albeit tortiously caused. Logic does not inherently require separate rules where the loss of use of property or detention of damages results not from tort but from breach of contract.

█ Nevertheless, in breach of contract cases the starting point is Section 337(a) of the Restatement of the Law of Contracts (1932), which was adopted by the Pennsylvania Supreme Court in *Penneys v. Pennsylvania R. R. Co.,* 408 Pa. 276, 183 A.2d 544 (1962). Section 337 provides as follows:

"When Interest Is Recoverable As Damages.

If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows:

(a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.
(b) Where the contract that is broken is of a kind not specified in Clause (a), interest may be allowed in the discre-

---

1. E. G. Marrazzo, supra.

tion of the court, if justice requires it, on the amount that would have been just compensation if it had been paid when performance was due.

Penneys noted with approval Comments d and g to § 337:

"d. The fact that the defendant in good faith denies the existence of the debt or other duty asserted by the plaintiff, or denies that he has committed any breach of contract, does not prevent the allowance of interest as damages for his breach.

\* \* \* \* \* \*

"g. Even though a contract does not itself specify the value of the performance that the defendant has failed to render, if that value can be determined by mathematical calculation from a standard fixed by the contract or from established market prices of the subject matter of the contract, interest is allowed on the amount so determined. This is true although the extent of the performance rendered and the existence of the market prices must be proved by evidence. That defendant had reason to foresee that a breach would deprive the plaintiff of the value determined by such a calculation."

Although we have quoted Section 337(b) above, it must be emphasized that no Pennsylvania Supreme Court case has adopted that provision which permits a discretionary award of interest in cases not falling within 337(a). In those cases not within 337(a), the factfinder must as in tort cases consider the circumstances, and when appropriate, allow compensation for the delay in payment measured by the legal rate of interest. This view of Pennsylvania law harmonizes Penneys with the analyses followed and results reached in such cases as *Pennsylvania Turnpike Commission v. Sanders & Thomas, Inc.,* 461 Pa. 420, 336 A.2d 609 (1975), and *Ben Construction Co. v. Sanitary Authority,* 424 Pa. 40, 225 A.2d 886 (1967). The Supreme Court of North Carolina reached substantially the same conclusion in interpreting Pennsylvania law in

*Tennessee Carolina Transportation Inc. v. Strick Co.,* supra. See also *W. D. Rubright Co. v. International Harvester Co.,* 358 F.Supp. 1388 (W.D.Pa.1973).

A mere reading of 337(a) demonstrates that this case does not fall within its scope. The breach that occurred in this case was clearly not in failing to "pay a definite sum of money" or to render a performance the value of which was "stated in the contract" or "ascertainable by mathematical calculation".

The trial of this case took six weeks, and damages were undoubtedly very difficult for the jury to assess. The furnace was put into operation immediately after installation, and was operated more or less continuously for several years until 1974, except for various breakdowns and other shutdowns including a strike, a flood and the explosion of another production furnace. The parties traced a history of breakdowns, shutdowns, repairs, modifications and startups of the furnace. Some of the breakdowns were admittedly no fault of defendant; the causes of others were hotly contested.

Plaintiff sought recovery of its purchase price, repair costs and lost profits, although the latter were excused by the court prior to trial, based on provisions in the contracts that excluded consequential damages.[2] See memorandum and order of January 13, 1975. As to the value of the furnace itself, plaintiff estimated replacement cost "as warranted" at $236,000 in December of 1969 and at $287,000 in April of 1974. In repair costs plaintiff claimed "vendor expenses" on 110 occasions with a total in excess of $150,000 plus "supply expenses" of $18,000. The total contract price for the installed furnace was approximately $387,000 including $15,000 for the engineering services contract. Of this $387,000, plaintiff withheld payment of $45,000 when various disputes over the furnace arose.

■ This recitation of facts shows that the damages in this case can in no way be

---

2. The engineering contract did not contain such a clause, but the court directed a verdict for defendant at trial as to that contract, as plaintiff failed to show any breach of it.

characterized as a "definite sum". The court finds as fact and holds as a matter of law that interest should not be allowed on plaintiff's claim.

■ We reach this decision not only from the legal and factual matters mentioned above, but also because of two additional factors that make this case somewhat unique. First of all, the contracts under which this action was brought excluded consequential damages.[3] Secondly, plaintiff had use of the furnace, and used it substantially, during the course of this litigation. While the furnace unquestionably did not conform to the contract (as the jury so found), its use was without doubt of considerable benefit to plaintiff.

We know of no cases disallowing the recovery of interest on the ground that it is an item of consequential damages. Nor do we wish to establish a general precedent to that effect. In this commercial setting, however, the question of interest, or payment for the delay in the use of the money, is inextricably intertwined with the questions of lost profits and the value between the furnace as delivered and as warranted. We observe too the case of *Carl Beasley Ford, Inc. v. Burroughs Corp.*, 361 F.Supp. 325 (E.D.Pa.1973), aff'd without opinion, 493 F.2d 1400 (3d Cir. 1974), where the court allowed plaintiff to recover interest it incurred in borrowing money to purchase computer equipment. The court there treated the interest as an item of consequential damages which are "in proper cases" recoverable under Sections 2–714 and 2–715 of the U.C.C. unless excluded.[4]

Under the circumstances of this case, plaintiff is not entitled to recover interest on its damages.

■ As to defendant's claim for interest on the $45,000 judgment in its favor, we observe that this claim has arisen in an unusual procedural posture. Defendant has not filed a motion to mold the verdict as did

plaintiff but at oral argument plaintiff conceded defendant's right to interest. Plaintiff's concession, however, was made on the premise that plaintiff, too, had a right to recover interest, and was necessitated by logical consistency. The court does not consider *plaintiff's* concession binding under these circumstances. For judicial economy we will consider defendant to have raised the question of interest on its judgment by oral motion and will dispose of that question at this time.

■ Plaintiff was entitled to withhold payment under the contract to offset defendant's breach. 12A Purdon's Stat. 2–717 provides:

> "The buyer on notifying the seller of his intention to do so may deduct all or any part of the damages resulting from any breach of the contract from any part of the price still due under the same contract."

We note, however, the apparently conflicting provision in § 2–607(1) that the "buyer must pay at the contract rate for any goods accepted" and the further provision in 2–607(2) that "acceptance does not of itself impair any other remedy provided by this Article for non-conformity".

■ If the jury had found in favor of defendant alone, unquestionably defendant would be entitled to recover interest, as the $45,000 payment owing was a "definite sum" due within the meaning of 337(a) of the Restatement of the Law of Contracts. However, by finding for plaintiff, the jury found that plaintiff was justified in withholding the payment, and that plaintiff's damages exceeded the amount of money withheld. Plaintiff, therefore, was not in breach of contract. Interest is recoverable under 337(a) only where defendant "commits a breach of contract to pay a definite sum of money".

If the court had allowed recovery of interest on plaintiff's award, we would of

---

3. But see footnote No. 2.

4. We are aware, of course, that the characterization of the interest as "consequential" rather than "incidental" was not essential to the Carl Beasley Ford case, as the interest would certainly have been recoverable just the same if deemed an incidental item of damages.

course have allowed defendant to offset that award prior to the computation of interest. But since interest has not been allowed on plaintiff's award and plaintiff was not in breach, we believe that allowing defendant interest on this set-off is not justified.

Both parties, of course, are entitled to interest from the date of the verdict, March 12, 1976.