In re SLAW CONSTRUCTION CORP.
(successor to Slaw-Landis Paving Co.
Inc.), Debtor.

SLAW CONSTRUCTION
CORPORATION,
Plaintiff,

v.

Richard J. ABT, Defendant.

Bankruptcy No. 80–00759G.
Adv. No. 81–0343G.

United States Bankruptcy Court,
E. D. Pennsylvania.

Sept. 22, 1981.

Thomas C. Sadler, Jr., J. Jackson Eaton, Butz, Hudders & Tallman, Allentown, Pa., for plaintiff/debtor, Slaw Construction Corp.

Edward M. Dunham, Jr., Patricia Chanson Pipitone, Spector, Cohen, Gadon & Rosen, P. C., Philadelphia, Pa. for defendant, Richard J. Abt.

## ORDER

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue at bench is whether the debtor has completed all the terms and fulfilled all of the conditions of a contract with the defendant for the construction of a road to entitle the debtor to the final payment due under that contract. We conclude that the debtor has completed all the terms and fulfilled all the conditions of the contract and is, thus, entitled to the final payment.

The facts of the instant case are as follows:[1] In June of 1979, Richard J. Abt ("Abt") solicited bids for the construction of a road and related storm water drainage system for a tract of land owned by him. Slaw Construction Corporation ("the debtor") submitted a bid and was eventually chosen for the job. The debtor and Abt signed a written agreement on August 10, 1979, which included a document entitled "Supplement to Contract." That supplement changed the terms of the contract in the following respects: (1) the debtor was not required to furnish a performance or maintenance bond, (2) Abt was entitled to retain 25% of the contract price, rather than 10%, to ensure the faithful performance of the contract by the debtor, (3) the contract price was reduced by $800 and (4) the debtor would be entitled to the amounts retained by Abt upon receipt of a letter from the responsible person from the township stating that all the work had been satisfactorily completed. The total contract price, after the deduction allowed under the supplement, was $76,200.70.

The debtor began work shortly after the signing of the contract but was unable to complete the job before the end of the year, as required by the contract. Abt acknowledged, however, that the debtor's failure to complete the job in 1979 was not due to any fault of the debtor but rather to the failure of the water company to complete its work in time to allow the debtor to finish the road surface before winter. Abt, therefore, agreed to pay for the increase in the cost of materials caused by that delay. Those increased costs amounted to $3,938.04. The contract price was further increased by $968 because of additional work done by the debtor on the drainage system. That additional work and cost was agreed to by Abt, through his engineer.

In the Spring, before the debtor could begin the job again, the debtor filed a petition under chapter 11 of the Bankruptcy Code ("the Code"). Thereafter, the debtor had some problems obtaining materials from his suppliers whereupon Abt paid those suppliers directly, thereby obtaining a $451.35 discount which was credited to him on the total contract price. The debtor thereafter completed the job and obtained a letter from the Abington Township Engineer on June 12, 1980, stating that the road had been constructed according to the approved plan and township specifications and that, in its present condition, the road was acceptable for dedication to the Township upon completion of the entire project. Abt asked the debtor to obtain another letter because the first letter failed to mention the storm water system work. As a result, a second letter from the Township Engineer was sent on June 24, 1980, to Abt stating that the work done on the storm water

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

system, as well as the road, was constructed according to the approved plan and township specifications and was acceptable for dedication to the township upon completion of the entire project.

Thereafter, the debtor demanded the $15,991.59 which Abt had retained out of the total contract price.[2] Abt refused to pay that money whereupon the debtor brought the instant complaint to recover that sum together with 16% interest from June 24, 1980, the date on which the debtor claims that amount came due.

■ In his answer and at trial, Abt raised several defenses. Abt's first defense is that the debtor has not fully completed the terms of the contract because it has failed to produce a letter from "the responsible person" in the Township stating that the work has been satisfactorily completed. Abt asserts that "the responsible person" referred to in the contract is the Board of Commissioners rather than the Township Engineer, because it is the Board of Commissioners that has the ultimate responsibility for approving the dedication of roads to the public use. We disagree with Abt's contention. First, although the Township Engineer is not the ultimate decisionmaking body, he is the one person in the local government to whom developers submit their plans and who has the technical expertise to examine those plans and advise the various departments of the local government and the Board of Commissioners on those plans. *See* Code of the Township of Abington—Subdivision of land, Chapter 146. Furthermore, the president of the debtor testified that, in his experience in the construction business, it is always the Township Engineer who inspects such construction and issues the type of letter required by the contract in this case. Furthermore, it is relevant, in determining that Abt and the debtor intended, by paragraph 4 of the contract supplement, to note that Abt failed to raise the objection that the letter was authored by the Township Engineer rather than the Board of Commissioners until this complaint was filed almost a year later.[3] Consequently, we conclude that the debtor did fulfill the requirements of the contract by obtaining the letter from the Township Engineer approving the work done by the debtor for Abt.

■ The second defense raised by Abt (in his proposed findings of fact) was that the contract between the debtor and Abt included a document entitled General Conditions which was apparently sent out with the solicitation of bids. Abt refers to paragraph 1.8(2)(a), which conditions final payment upon a final inspection by Abt, and asserts that, since such an inspection was never done, the debtor is not entitled to the final payment. We reject this argument for two reasons. First, the document referred to by Abt was never introduced into evidence at the trial herein and there was no evidence to show that it was indeed part of the contract between Abt and the debtor. Second, even if that document were part of the contract between Abt and the debtor, it is clear that the terms of paragraph 4 of the contract supplement control over the terms of paragraph 1.8(2)(a) of the General Conditions because the contract supplement is a typed document (rather than a printed form) which states specifically that it changes the terms of the printed contract.[4] Consequently, we conclude that paragraph 4 of the contract supplement contains the only condition for final payment (a letter from the responsible person at the Town-

---

**2.** The total contract price with extras was $81,106.04. The total of payments by Abt and credits for discounts was $65,114.45, leaving a balance due of $15,991.59. Abt admitted that that is the amount of the contract price which he has retained.

**3.** It is also relevant that in June, 1980, Abt did object to the first letter issued by the Township Engineer because it did not mention the storm water work. The debtor promptly corrected that by having the Township Engineer issue another letter.

**4.** It is a general rule of contract interpretation that where a typewritten portion of a contract conflicts with a printed part of that contract, the typewritten portion prevails. *See, e. g., National Heater Co., Inc. v. Corrigan Co. Mechanical Contractors, Inc.*, 482 F.2d 87 (8th Cir. 1973); *Century Refining Co. v. Hall*, 316 F.2d 15 (10th Cir. 1963).

ship) which condition we have already found the debtor to have fulfilled.

▮ Abt raised as a further defense that the price charged by the debtor was in excess of the fair market value of the work done and that Abt only agreed to the price under duress and because of the debtor's financial condition. However, Abt offered no evidence that any pressure was put on him to enter into the initial contract for $77,000.70 or that the debtor used any coercive methods at any subsequent time with respect to any of the increases in that price. In fact, the evidence at trial was that the increases in that price were caused either by the delay brought about by the water company (the $3,938.04 in increased cost of materials) or by a problem with Abt's plan (which necessitated the extra work on the drainage system amounting to $968). Furthermore, Abt admitted that he had previously agreed with the debtor that the increased costs were not due to any fault of the debtor and that he had not objected to the amounts of those increases. In addition, Abt presented no evidence to support the conclusion that those increases were unreasonable, that he had agreed to them only under duress or that the work done by the debtor was not worth the price charged or was in any way unsatisfactory.[5] Consequently, we conclude that Abt's third defense is without merit.

▮ Abt's fourth defense is that he should not be required to turn over the retained funds to the debtor because he may still be liable to any suppliers of the debtor on the job who were not paid or for work done by the debtor in a faulty manner. Abt asserts that, in exchange for not requiring the debtor to obtain a performance bond, Abt was allowed to retain 25%, rather than 10%, of the contract price. Therefore, Abt contends that the retained funds were meant to replace the performance bond in terms of protecting Abt and, thus, Abt should be permitted to retain those funds until he is no longer liable for the work done by the debtor. We reject Abt's assertions because we find no support for them in the contract between the parties. Paragraph 4 of the contract supplement clearly states that the only condition on release of the retained funds was the requirement of a letter from the responsible Township official. Had the parties intended that the funds not be released until Abt was relieved of all liability then the contract would have so stated. We refuse to rewrite the contract made by the parties to provide Abt with the protection he desires.[6]

▮ The last defense raised by Abt is that the contract between him and the debtor is void *ab initio* because the debtor committed fraud in inducing Abt to enter into the original contract by failing to inform Abt that it was having financial difficulties. Where a party is seeking to rescind a contract on the basis of fraud, that party must prove by clear, unequivocal and convincing evidence that the other party misrepresented a material fact with the requisite intent and that the allegedly defrauded party reasonably relied on that misrepresentation to his detriment.[7] We conclude that Abt has failed to sustain that heavy burden. He asserts that the fraud committed by the debtor was that it failed to advise Abt that it could not obtain a bond because of its financial difficulties. How-

---

5. Although Abt did testify that there was some damage done to the curbs during the delay in the winter of 1980, the president of the debtor testified that that damage was repaired in the spring. No other evidence of any defects in the work done by the debtor was presented at the trial.

6. The courts will not rewrite a contract just because the parties have made a bad bargain. *See, e. g., Mellon Bank N. A. v. Aetna Business Credit, Inc.,* 619 F.2d 1001 (3d Cir. 1980); *Brokers Title Co., Inc. v. St. Paul Fire & Marine Ins. Co.,* 610 F.2d 1174 (3d Cir. 1979); *Trans-*

*america Ins. Co. v. McKeesport Housing Authority,* 309 F.Supp. 1321 (W.D.Pa.1970); *Marcin v. Darling Valve & Mfg. Co.,* 259 F.Supp. 720 (W.D.Pa.1966).

7. *See, e. g., Classic Bowl, Inc. v. A. M. F. Pinspotters, Inc.,* 403 F.2d 463 (7th Cir. 1968); *Krumholz v. Goff,* 315 F.2d 575 (6th Cir. 1963); *Perma Research & Dev. Co. v. Singer Co.,* 402 F.Supp. 881 (S.D.N.Y.1975); *U. S. v. Willard E. Fraser Co.,* 308 F.Supp. 557 (D.Mont.1970), *aff'd* 459 F.2d 483 (9th Cir. 1972).

ever, Abt produced no evidence that the debtor was having financial difficulties in the summer of 1979 or that it could not have obtained a bond for that reason. In fact, the president of the debtor testified that it could not obtain a bond because there was a question of its liability on another job and that he had so informed Abt. In light of the lack of any clear, convincing and unequivocal evidence of misrepresentations by the debtor, we must conclude that Abt has failed to sustain his burden of proof on the issue of fraud.

The debtor raised a final issue: that is, whether it is entitled to recover damages caused by Abt's delay in making the final payment due under the contract. Under Pennsylvania law, a party may be compensated for damages incurred by the failure of another to remit a specific sum of money due and owing under a contract.[8] While some courts have held that the measure of damages in such a case is the prevailing market rate of interest at the time the money became due and owing,[9] Pennsylvania courts provide that the measure of damages is determined by the legal rate of interest (i. e., 6%).[10] Therefore, since we have held that the debtor was entitled to the final payment of $15,991.59 as of June 24, 1980, we conclude that the debtor is also entitled to damages for the failure of Abt to remit that payment at the rate of 6% per annum.

---

8. See, e. g., Hussey Metals Div. v. Lectromelt Furnace Div., 417 F.Supp. 964 (W.D.Pa.1976); Formigli Corp. v. Fox, 348 F.Supp. 629 (E.D.Pa. 1972); Aviation Associates v. The Dixon Co., Inc., 333 F.Supp. 982 (M.D.Pa.1971), and cases cited therein.

9. See, e. g., Clarke Baridon Inc. v. Merritt-Chapman & Scott Corp., 311 F.2d 389, 399 (4th Cir. 1962).

10. See cases cited in note 8 supra.