In re SLAW CONSTRUCTION CORP. (Successor to Slaw-Landis Paving Co., Inc.), Debtor.

SLAW CONSTRUCTION CORPORATION, Plaintiff,

v.

Warren A. BRADY, individually and trading as Warren A. Brady Excavating, Defendant.

Bankruptcy No. 80–00759G.
Adv. No. 80–0405G.

United States Bankruptcy Court,
E.D. Pennsylvania.

March 23, 1983.

---

Thomas C. Sadler, Jr., Butz, Hudders & Tallman, Allentown, Pa., for debtor/plaintiff, Slaw Const. Corp.

James J. Auchinleck, Jr., Newtown, Pa., for defendant.

## OPINION

WILLIAM A. KING, Jr., Bankruptcy Judge:

The issue at bench is whether the debtor has completed all the terms and fulfilled all of the conditions of a contract with the defendant for certain paving work to entitle the debtor to the final payment due under that contract. We conclude that the debtor has completed all the terms and fulfilled all the conditions of the contract and is, thus, entitled to the final payment.

The facts of the instant case are as follows:[1] On June 27, 1979, Slaw Construction

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

Company ("the debtor") and Warren A. Brady, Jr., t/a Warren A. Brady Excavating ("Brady") entered into a written agreement wherein the debtor agreed to perform certain paving work at a parking lot under construction for the sum of $62,900.00. In addition to the aforesaid agreement, the debtor rented equipment to Brady during the period of June 6, 1979, through June 19, 1979, pursuant to a separate oral agreement. On June 20, 1979, the debtor commenced work under the terms of the written paving contract and finished the work on July 7, 1979. The debtor thereafter rendered its invoices to Brady for the paving work in the amount of $62,900.00 and for the rental of equipment in the amount of $4,245.23. Brady paid $3,683.63 to the debtor for the equipment rental. However, when the debtor demanded payment of the $62,900.00 from Brady, he advised the debtor that he had not been paid by his contractor, Anthony DiAntonio, Inc. ("DiAntonio"), but that arrangements had been made to have DiAntonio pay the debtor directly and DiAntonio would, in turn, charge Brady's account for the $62,900.00.[2] The debtor received two (2) checks from DiAntonio, one dated July 31, 1979, in the amount of $40,-000.00 and another check post-dated August 16, 1979, for $22,900.00. The debtor presented the $40,000.00 check for payment, but said check was returned to the debtor marked "payment stopped." The debtor then informed Brady that the $40,000.00 check from DiAntonio had not been honored and Brady thereafter delivered to the debtor a certified check for $40,000.00 and said check was cashed. Brady then advised the debtor to present the second DiAntonio check for $22,900.00 for payment but when the debtor did so, that check was also returned marked "payment stopped." Consequently, the debtor demanded that Brady

pay the balance due of $22,900.00, but was told by Brady that he would pay when he collected funds he claimed were due him from DiAntonio. On July 28, 1980, the debtor filed the instant complaint against Brady demanding judgment against Brady in the amount of $23,261.60,[3] plus interest and costs. On September 4, 1980, Brady filed an answer wherein he alleges that the debtor agreed to look to DiAntonio for payment for the paving and that DiAntonio agreed to make said payment. The answer also contained "third party claim" against "additional defendant" DiAntonio alleging that DiAntonio is alone liable or liable over to Brady for the amount if any, due the debtor.

At the outset, we note that the debtor and Brady are the only signatories to the paving contract,[4] which provides, in pertinent part:

(1) the lump sum price is $62,900.00

  *  *  *  *  *  *

(6) Billing to be once a month, payment within 5 days, 10% retainage

(7) Retainage to be paid within 30 days of satisfactory completion of this contract. Payment of retainage must not be effected by work or conditions not covered by this contract

  *  *  *  *  *  *

Nevertheless, Brady maintains that the aforesaid contract required: (1) that the debtor look to DiAntonio for payment for the work done; and (2) that the work performed by the debtor was subject to approval and acceptance by DiAntonio. Brady so contends despite the fact that the paving contract makes absolutely no mention of DiAntonio and contains no provision for third party acceptance of the work performed. The Supreme Court of Pennsylva-

---

**2.** The record does not establish, nor does Brady so contend, that the debtor, under this arrangement, waived its contractual right to demand payment from Brady for the paving work performed. This is especially apparent in light of the fact that Brady did, in fact, subsequently tender a $40,000.00 check to the debtor in partial satisfaction of the debt owing under the paving contract.

**3.** The $23,261.60 figure represents the balance due on the paving contract ($22,900.00) plus the $361.60 allegedly owed under the equipment rental agreement.

**4.** *See* Exh. P–1.

nia, in *East Crossroads Center, Inc. v. Mellon-Stuart Co.,* 416 Pa. 229, 230–31, 205 A.2d 865, 866 (1965), has held:

> When a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that expressed. Where the intention of the parties is clear, there is no need to resort to extrinsic aids or evidence.

This is precisely the case at hand. The paving contract is precise and unambiguous and the only two parties who signed it are bound "by its contents alone." Since the paving contract made no provision for third party acceptance of the work done or for payment from a third party, we conclude that the paving contract obligated Brady to pay the debtor $62,900.00 upon satisfactory completion of work performed within the time specified therein.

■ In addition, we are unable to conclude that the paving contract was in any way modified to change the result reached above. Brady testified, regarding the payment-within-5-days provision contained in paragraph six (6) of the paving contract, that he told the debtor's president that "I can't pay you in five days because I don't have that kind of money. When I get paid you'll get paid" (N.T. 10/26/81 at 32). Brady further testified that the debtor's president replied "Fine. It's a formality" (N.T. *id.*). While we are mindful that parties may modify a written contract which they previously have entered into by subsequent oral agreement,[5] we can find no evidence of any modification of the paving contract involved herein other than the testimony of Brady recited above. This testimony, standing alone, does not constitute adequate proof that Brady and the debtor agreed to modify the five-day provision contained in paragraph six (6) of the paving contract.

As to Brady's contention that the work done by the debtor was not, in fact, performed satisfactorily, we are unable to find any evidence in the record, beyond Brady's allegations, which establishes that the paving project was not properly completed. To the contrary, the debtor introduced photographs of the work in question which show, to our satisfaction, that the paving was performed and completed in a workmanlike manner.[6] In any event, we find it dispositive that Brady produced no photographic evidence of faulty workmanship or expert testimony establishing the same. In short, Brady adduced no credible evidence to contradict the debtor's demonstration that the paving work was satisfactorily completed. To the contrary, Brady himself tendered a certified check for $40,000.00 to the debtor for the alleged "unsatisfactory work".[7]

■ We next consider the debtor's contention that it is owed a balance of $361.60 for the equipment rental. Brady testified that his check to the debtor for $3,683.63 represented payment in full under the oral equipment rental agreement (N.T. 10/26/81 at 34). The record establishes that Brady and the debtor did, in fact, modify the rental agreement to reflect a $200.00 credit given to Brady by the debtor for fuel supplied by Brady to run a rented bulldozer (N.T. 10/26/81 at 18). This modification is evidenced by an appropriate notation on the $3,683.63 check deducting the $200.00 from the amount owed for the bulldozer rental. Brady maintains that the rental agreement was also modified to evidence the cancellation of a $725.00 bill for the rental of a grader which had allegedly broken down. According to Brady, the debtor agreed not to charge Brady for the rental of the grader (N.T. 10/26/81 at 34). We conclude that no such modification occurred. To the contrary, the $3,683.63 check drafted by Brady plainly states that the check is being presented in payment for the bulldozer rental less $200.00 for fuel and for one-half

---

5. *See Wagner v. Graziano Construction Co.,* 390 Pa. 445, 136 A.2d 82 (1957); *Knight v. Gulf Refining Co.* 311 Pa. 357, 166 A. 880 (1933).

6. *See* Exhs. P–9(a), (b), (c), (d).

7. *See* Exh. P–6.

the bill for the rental of the grader.[8] If the parties had indeed agreed upon this additional modification, it follows that Brady would, as he did regarding the fuel adjustment for the bulldozer rental, have duly noted that payment was being made in full satisfaction under the equipment rental agreement and that the bill for the grader rental had been cancelled. This is especially true in light of the fact that the check was drafted after the paving project was completed and after any alleged compromise had been reached with regard to the rental of the grader. Consequently, we will also enter judgment in favor of the debtor in the amount of $361.60.

Brady additionally contends that DiAntonio was a necessary and essential party to this case and that he was substantially prejudiced because the hearing was held without DiAntonio being joined as a party thereto. In his answer, Brady asserted a "third party claim" against "additional defendant" DiAntonio. However, Brady did not make a formal motion, pursuant to Rule 719 of the Rules of Bankruptcy Procedure, to join DiAntonio. Nevertheless, Brady, in his answer, demands judgment in his favor on his "third party complaint" against DiAntonio. The record discloses that Brady did not file a third party complaint against DiAntonio. Notwithstanding Brady's failure to join DiAntonio, the bankruptcy court has the power, pursuant to Rule 719(a), to order that DiAntonio be made a party if any of the reasons set forth in subsection (a) exist. Rule 719(a) provides:

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the proceeding if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the proceeding and is so situated that the disposition of the proceeding in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double,

multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

See Rules of Bankruptcy Procedure. 11 U.S.C. Rule 719(a).

The instant proceeding involves a complaint filed by the debtor against Brady for breach of contract arising out of a fully integrated agreement signed only by the debtor and Brady and which makes no reference whatsoever to DiAntonio. In fact, joinder of DiAntonio would have been tantamount to the consideration of extrinsic evidence and this would, we believe, have been improper by reason of our holding that the meaning of the contract at hand was to be determined by its contents alone. The express terms of the paving contract make no provision for any third party involvement. And, in view of our determination that the project was satisfactorily completed, no basis exists whereby Brady could deny his contractual obligation to pay the debtor directly the balance due under the paving contract. Any claim that Brady may have against DiAntonio can not arise out of the paving agreement in question since Brady and DiAntonio simply did not expressly contract for an exchange of benefits and burdens thereunder nor can such a transfer be reasonably implied. Certainly, the non-joinder of DiAntonio has no bearing on the debtor's claim against Brady for monies due under the equipment rental agreement.

In any event, Brady testified that he had, as of the date of the hearing in this matter, instituted a separate suit against DiAntonio in another forum (N.T. 10/20/81 at 46). Consequently, any claim that Brady may have against DiAntonio can and should be resolved in that forum. Our ruling today bears no impact on the rights and liabilities existing between Brady and DiAntonio under other agreements executed between themselves.

8. See Exh. P–5.

Finally, the debtor contends that it is entitled to recover damages on account of Brady's delay in making the final payment due under the contract. In *In re Slaw Constr. Corp. v. Abt.*, 14 B.R. 175 (Bkrtcy.E.D.Pa.1981), Judge Goldhaber held that:

> Under Pennsylvania law, a party may be compensated for damages incurred by the failure of another to remit a specific sum of money due and owing under a contract.[9] While some courts have held that the measure of damages in such a case is the prevailing market rate of interest at the time the money became due and owing,[10] Pennsylvania courts provide that the measure of damages is determined by the legal rate of interest (i.e., 6%).[11]

14 Bankr. at 179.

Consequently, since we have held that the debtor was entitled to the final payment of $22,900.00 as of July 12, 1979, five (5) days after completion of the paving, Slaw is entitled to interest damages thereon for failure of Brady to remit that payment at the rate of 6% per annum. Similarly, Slaw is entitled to interest damages for failure of Brady to pay the $361.60 due and owing on the equipment rental. Since the date of the partial payment for the equipment rental was July 18, 1979,[12] interest will accrue on the $361.60 from that date at the rate of 6% annually.

---

9. *See, e.g., Hussey Metals Div. v. Lectromelt Furnace Div.,* 417 F.Supp. 964 (W.D.Pa.1976); *Formigli Corp. v. Fox,* 348 F.Supp. 629 (E.D.Pa. 1972); *Aviation Associates v. The Dixon Co., Inc.,* 333 F.Supp. 982 (M.D.Pa.1971), and cases cited therein.

10. *See, e.g., Clarke Baridon Inc. v. Meritt-Chapman & Scott Corp.,* 311 F.2d 389, 399 (4th Cir.1962).

11. *See* cases cited in note 9 *supra.*

