In re SLAW CONSTRUCTION CORPO-RATION (Successor to Slaw-Landis Paving Co., Inc.), Debtor.

SLAW CONSTRUCTION CORPORATION, Plaintiff,

v.

GEORGE WASHINGTON INDUSTRIAL PARK, INC., and First Pennsylvania Bank, N.A.,* Defendants.

Bankruptcy No. 80–00759G.

Adv. No. 81–0344G.

United States Bankruptcy Court, E.D. Pennsylvania.

May 27, 1983.

Thomas C. Sadler, Jr., J. Jackson Eaton, III, Butz, Hudders & Tallman, Allentown, Pa., for debtor/plaintiff, Slaw Const. Corp.

H. David Kraut, Hamburg, Rubin, Mullin & Maxwell, Lansdale, Pa., for defendant, George Washington Indus. Park, Inc.

Roslyn G. Pollack, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for defendant, First Pennsylvania Bank N.A.

Donald M. Harrison, Philadelphia, Pa., for the Creditors' Committee.

OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue in the case *sub judice* is whether certain funds held by a bank as

* By stipulation of the parties, First Pennsylvania Bank, N.A., GWIP's construction lender, was dismissed with prejudice as a defendant in the instant action. *See* Stipulation and Notice of Dismissal.

retainage under a paving contract executed between the debtor and the defendant, is now due and owing to the debtor. We conclude that the aforesaid retainage is presently owing to the debtor because the release of the retainage, despite the defendant's contention, is not conditioned upon either the posting of a two-year maintenance bond or the dedication of a paved road to the township in which the paving was done.

The facts of the instant case are as follows:[1] On October 20, 1978, Slaw Construction Corporation ("the debtor") and George Washington Industrial Park, Inc. ("GWIP") entered into a contract whereby the debtor agreed to perform certain paving work for GWIP in West Norriton Township, Pennsylvania ("the township"). When the work was completed, the township informed the debtor, by a letter dated April 14, 1980, that the work performed met the township's specifications. The total amount due under the contract was $135,548.45, of which $116,957.56 had been paid by GWIP. The balance, $18,590.89, is the amount allegedly owed to the debtor by GWIP which is being held by First Pennsylvania Bank, N.A. ("the bank") as retainage. GWIP has refused to authorize the bank to release the said retainage to the debtor because it contends that certain conditions of the contract have not been met by the debtor. On April 11, 1980, the debtor filed a petition for relief under chapter 11 of the Bankruptcy Code ("the Code"). On April 8, 1981, the debtor filed the instant complaint to compel payment of the $18,590.89 balance plus interest thereon.

GWIP initially contends that the contract terms require that the debtor first post a two-year maintenance bond before the retainage can be released. Paragraph 24 of the contract, upon which GWIP relies, provides:

> 24. The Contractor warrants the work to be performed and the materials and equipment to be furnished under this Agreement against defects in material and workmanship for a period of two (2) years *from the date of final acceptance of the completed work by Owner and dedication to the appropriate municipal or governmental authority or agency.* The Contractor agrees to perform the work in accordance with the Engineer's directions and the plans and specifications pertaining to the work in the best and most workmanlike manner by qualified, careful and efficient workers. Unless otherwise specified, all materials and equipment furnished hereunder shall be new. Within a reasonable time after receipt of written notice thereof, the Contractor shall, and will also require its subcontractors (if any) to make good any defects in materials or workmanship which may develop during said warranty period and any consequential or incidental damage or injury caused by such defects or the repairing of same, at its own expense and without cost to Owner. *Contractor's obligations pursuant to this Paragraph 24 shall be secured by delivery to Owner of a two-year "maintenance bond" in a form satisfactory to Owner and the appropriate municipal or governmental agency or authority and issued in favor of Owner, or such agency or authority, or such other parties as Owner shall designate* (emphasis added).

*See* Exh. P–1a at ¶ 24.

While paragraph 24 may obligate the debtor to post a maintenance bond at some time, it does not, as GWIP contends, make the posting of said bond a condition precedent for the release of the retainage. On the contrary, the paragraph relating to the maintenance bond (paragraph 24) has no apparent connection with the paragraph relating to the release of the retainage (paragraph 32). Rather, paragraph 24 merely fixes the date from which the debtor's warranty and the maintenance bond should run. Paragraph 32 provides as follows:

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

32. The retainage as described under payments to the Contractor shall be released 30 days after final payment to the contractor subject to reasonable *completion of all punch list items and acceptance by the Owner, Township and lending institution* (emphasis added).

GWIP next contends that the contract terms make payment of the retainage contingent upon the township's acceptance of the "dedication" of the road as opposed to the township's mere approval of the debtor's workmanship. In other words, GWIP argues that the debtor must await dedication of the road to the township before it can receive the balance owing under the contract. The debtor, on the other hand, maintains that the contract provides for the release of the retainage upon "acceptance" by the township (and others)[2] of the work performed and that there is no requirement of dedication to the township before payment of the retainage. Our immediate focus, therefore, is on the interpretation of the word "acceptance" as it appears in the pertinent provisions of the contract. Moreover, since we are of the opinion that the word "acceptance" is susceptible of different meanings in the instant case, we will consider the words of the contract, the alternative meanings suggested by counsel and the objective evidence offered in support of those suggested alternative meanings in our interpretation of that word. *Mellon Bank, N.A. v. Aetna Business Credit,* 619 F.2d 1001, 1011 (3d Cir.1980).

GWIP asserts that, in the context of this case, "acceptance" can only be interpreted as meaning acceptance of the dedication of the road. We disagree.

At the outset, we note that there is no use of the word "dedication" in paragraph 32. Rather, the only place where that word appears in the contract is paragraph 24 and paragraph 24 does not speak about contract payments. Moreover, assuming, *arguendo,* that we were to construe "acceptance" as meaning "acceptance by dedication," paragraph 32 would stand for the proposition that the road was to be dedicated to "the Owner, Township and lending institution" and not just the township. In any event, we find it dispositive that paragraph 24 is carefully drafted to read "acceptance" by the owner (GWIP) and "dedication" to the township whereas paragraph 32, the section of the contract dealing exclusively with the release of the retainage, contains no such differentiation.[3]

GWIP also alludes to the "Special Conditions" to the contract, which provide:

After final inspection and acceptance by the Owner of all work under the Contract, the Contractor shall prepare this requisition for final payment. The total amount of the final payment due the Contractor under this contract shall be the amount computed as described above less all previous payments. Final payment to The Contractor shall be made subject to his furnishing the Owner with the "CONTRACTOR'S RELEASE" and "STATEMENT OF SURETY".

*See* Exh. P–1c at SC–4.

We fail to see what relevance these special conditions have to the issue of whether the retainage is presently due and owing. GWIP offered no evidence that the "CONTRACTOR'S RELEASE" and the "STATEMENT OF SURETY" are in any way related to the two "conditions" upon which GWIP relies as a basis for withholding the retainage—namely, the posting of the maintenance bond and the dedication of the

---

**2.** *See* Exh. P–1a at ¶ 32.

**3.** GWIP relies on Exh. P–3, a letter from the West Norriton Township Superintendent of Highways to the debtor, and the Pennsylvania First Class Township Code in support of its view that the "acceptance" means acceptance of the dedication of the road and that no other type of acceptance by the township was contemplated by the parties to the contract. However, neither the Township Code nor the letter represent communications of and between the parties to the contract, namely, the debtor and GWIP. In any event, we conclude that any variation of the written words of the contract would not be justified by the aforesaid letter and the Township Code. Therefore, our holding today is based on the words of the contract between the debtor and GWIP and not the extrinsic evidence thereto.

road to the township. In addition, the evidence presented established that no mechanic's liens have been filed by the debtor's subcontractors since the paving work was completed and GWIP agrees that it is now too late to file any such liens. Therefore, it would appear that there are no liens to be released.

We find it unnecessary to decide whether the debtor is still obligated to post the two-year maintenance bond under the present circumstances for two reasons.[4] First, the narrow issue before us is whether the $18,590.89 retainage is presently due and owing and, as we have previously determined, the release of the retainage is not contingent upon the posting of the maintenance bond. Second, GWIP contends that the debtor is required to provide a maintenance bond *once* the township accepts the dedication of the road.[5] In this regard, it is undisputed that the road has not yet been dedicated to the township. Therefore, according to GWIP's own argument, the debtor would not yet have to post the bond because the road has still not been dedicated to the township.

 Finally, the debtor contends that it is entitled to recover damages on account of GWIP's failure to authorize the bank to release the retainage upon completion of the paving job. In *In re Slaw Constr. Corp. v. Abt,* 14 B.R. 175 (Bkrtcy.E.D.Pa.1981), we held that:

> Under Pennsylvania law, a party may be compensated for damages incurred by the failure of another to remit [6] a specific sum of money due and owing under a contract. While some courts have held that the measure of damages in such a

case is the prevailing market rate of interest at the time the money became due and owing,[7] Pennsylvania courts provide that the measure of damages is determined by the legal rate of interest (i.e., 6%).[8]

14 B.R. at 179.

Consequently, since we have held that the debtor was entitled to the $18,590.89 balance as of April 14, 1980, the date of the township's approval of the debtor's workmanship, the debtor is entitled to interest thereon for GWIP's failure to authorize the release of said balance.

---

4. The debtor maintains that even if the maintenance is and was, at one time, an enforcible obligation under the contract, it is now unenforceable because the road has been so abused that dedication of the road in its present condition to the township is impossible. Further, the debtor argues that, given the "unreasonable" length of time that has passed since the road was completed, it should not be required to post the maintenance bond.

5. *See* GWIP's brief at 5.

6. *See,* e.g., *Hussey Metals Div. v. Lectromelt Furnace Div.,* 417 F.Supp. 964 (W.D.Pa.1976); *Formigli Corp. v. Fox,* 348 F.Supp. 629 (E.D.Pa. 1972); *Aviation Associates v. The Dixon Co., Inc.,* 333 F.Supp. 982 (M.D.Pa.1971), and cases cited therein.

7. *See,* e.g., *Clarke Baridon Inc. v. Meritt-Chapman & Scott Corp.,* 311 F.2d 389, 399 (4th Cir.1962).

8. *See* cases cited in note 6 *supra.*